HERBERT L. CLEAVES *vs.* DWIGHT BRAMAN.

SAME *vs.* CURTIS MOON.

SAME *vs.* GILBERT FARNSWORTH.

SAME *vs.* WATSON JOY.

Hancock. Opinion November 11, 1907.

*Right of Way. Obstruction of Same. Construction of Grant. Damages. Evidence.*

In the case at bar the plaintiff acquired title to certain lots of land at Sullivan Harbor, Maine, lying north of the county road, comprising what is known as the Hotel Cleaves Lot, and also as appurtenant to these lots "a right of way for all purposes of a way over a piece of land forty feet wide in every part, lying easterly of and adjoining said lots and extending from the northeast corner of the last described lot to the county road." The plaintiff's house is situated about thirty feet from the dividing line between his lot and the forty feet strip. The fee of this forty feet strip of land known as the avenue or boulevard, is in the defendant Braman, subject to the easement above described in favor of the plaintiff. The Braman property known as the Manor Inn, is situated at the northerly.end of this forty feet strip at a distance of about 160 feet from the county road. The defendants built a fence within the limits of this forty feet strip and on either side of it and at the southerly end near the line of the county road, erected two stone pillars about fourteen feet apart with two short sections of fence connecting each of them at an angle with the southerly end of the fence on either side of the avenue. A passageway fourteen feet in width is thus afforded from the county road northerly over the avenue.

In an action to recover damages for the obstruction of the plaintiff's right of way, caused by the erection of these fences and stone pillars.

*Held:* (1) That the plaintiff acquired by his deed, not merely a personal right of way available for his own use, but a right of way appurtenant to his house and lot available for the use of himself, his family and his guests, but that he is not entitled to use the whole forty feet strip unless reasonably necessary for the purposes of a way.

(2) That in the use and enjoyment of his easement, the plaintiff was not limited to a single passage way back and forth over his land to this forty feet avenue, but that he had a right to pass onto that forty feet strip over his land, at all feasible points from the north end of his east line to the south end of it down to the county road; and that after passing from the county road onto the forty feet avenue, he had a right to go onto his own land at all feasible points in the east line thereof.

(3) That the declarations of the guests at the plaintiff's hotel made at the

time of leaving and tending to show that they left on account of the fence were admissible in evidence as expressive of the motive and reason for their action.

(4) That upon the evidence showing that the obstruction had existed but twelve days prior to the commencement of these actions, the damages assessed by the jury must be deemed excessive, but if the plaintiff shall remit all of the verdict above $50 the motion for a new trial is overruled. In that event the plaintiff would be entitled to judgment for $50 and interest against each defendant, but would be entitled to only one satisfaction.

On exceptions and motion by defendants.     Exceptions overruled. Motion sustained unless remittitur be made.

Four actions on the case for obstructing the plaintiff's right of way.    Dwight Braman, the defendant in the first above entitled action, is the real defendant in all the other actions, the acts complained of in those actions having been committed under his direction and by his orders.    By agreement the four actions were tried together.

At the time these actions were brought, the plaintiff owned certain lots of land comprising his hotel lot, and also as appurtenant to these lots and his hotel lot, "a right of way for all purposes of a way over a piece of land forty feet wide in every part, lying easterly of and adjoining said lots and extending from the northeasterly corner of the last described lot to the county road," and the act complained of in each of these actions was the obstruction of this right of way by the defendants.    Plea, the general issue together with the following brief statement: "And by the way of brief statement the defendant says that he has in no way interfered with or obstructed the plaintiff's reasonable use of said right of way in, over and upon said strip of land to be used as a way and described in the plaintiff's deed."

Tried at the January term, 1907, of the Supreme Judicial Court, Hancock County.    Verdict for plaintiff for $142.25 in each action. The defendants took exceptions to certain rulings made by the presiding Justice during the trial, and also filed a general motion for a new trial.

The case fully appears in the opinion.

*Deasy & Lyman,* for plaintiff.

*Bird & Bradley, B. E. Clark and P. H. Gillin,* for defendants.

SITTING :   WHITEHOUSE,  SAVAGE,  PEABODY,  SPEAR,  CORNISH,  JJ.

WHITEHOUSE, J.   These are actions on the case for obstructing the plaintiff's right of way.   Dwight Braman the defendant in the action first named is the real defendant in all the other actions, the acts complained of in those cases having been committed under his direction.   By agreement the four cases were tried together.

Some years prior to the commencement of these actions, the plaintiff had acquired title to certain lots of land at Sullivan Harbor, Maine, lying north of the county road, comprising what was known as the Hotel Bristol Lot or the Hotel Cleaves Lot, and also as appurtenant to these lots "A right of way for all purposes of a way over a piece of land forty feet wide in every part lying easterly of and adjoining said lots and extending from the northeasterly corner of the last described lot to the country road."   Thus the plaintiff's property is bounded on the south by the county road and on the east by the piece of land in question forty feet in width on which he has a right of way.   His house is situated about thirty feet from the dividing line between his lot and the forty feet strip.

The fee of this forty feet strip of land known as " the avenue " or " the boulevard " was then and has since continued to be in the defendant Braman subject to the easement above described in favor of the plaintiff.   The defendant Braman's property known as the Manor Inn, is situated at the northerly end of this forty feet strip at a distance of about 160 feet from the county road.

August 13, 1906, Braman and the other defendants erected within the limits of this forty feet avenue and on either side of it a fence of woven wire attached to cedar posts four feet in height with a top rail of cedar poles.   On the westerly side this fence is continuous along the entire front of the plaintiff's property with the exception of an opening therein about fourteen feet in width nearly opposite the rear end of the plaintiff's lot.

At the southerly end of the forty feet avenue near the line of the county road are two stone pillars about fourteen feet apart with two short sections of fence connecting each of them at " an angle "

with the southerly end of the fence on either side of the forty feet avenue.  A passageway fourteen feet in width is thus afforded from the highway northerly over the avenue.

The erection of this fence on the westerly side of the forty feet strip is the act of obstruction complained of in these suits.  The situation may be approximately represented by the following diagram:

At the trial the defendant contended that he was bound only to leave a convenient way for the plaintiff to pass in from and out upon the county road; also that he was bound only to leave a convenient way for the plaintiff to pass back and forth from his own land to or from the forty feet strip.

Upon the latter point the presiding Justice instructed the jury as follows: "But in this case, Mr. Cleaves owns the land on the side of the forty foot strip, not at the end, and the forty foot strip is right next to his land; they are coterminous; they come right together; so that Mr. Cleaves not only has the county road on one side of his lot, but he has a right of way on the forty foot strip on the east side of his lot. Therefore, I rule to you, and instruct you, that Mr. Cleaves, had a right of access to this forty foot strip from his land and a right of access to his land from the forty foot strip for the whole length of his eastern line north and south; that is, he could get on to that forty foot strip from whatever part of his eastern line he saw fit, and he could leave that forty foot strip to get on to his land over the eastern line at any point where he saw fit, and where it was possible to do so. If there was any place along there where it was not possible to do that in the state of nature, then his right would not extend to that part. If by reason of some ravine or some ledge on the line he could not get across the ravine or over the ledge, he could not claim a right to pass on to the forty foot strip over such ledge or ravine, but must content himself with where it was feasible. So, then, wherever feasible, from the north end of his eastern line to the south end of it, down to the county road, Mr. Cleaves had a right to pass on to that forty foot strip, and, in going on the forty foot strip from the county road, he had a right to pass on to his own land wherever feasible and he saw fit."

At the trial the plaintiff testified as follows in reply to questions by his counsel:

Q. What use do you make of your house? Is it simply a dwelling or do you use it for some other purpose?

A. No sir, we run it as a summer hotel, a public hotel, a boarding house; keep summer people there; transient people.

Q.　Did people leave your hotel on account of the fence?

A.　Yes, I think there was.

Q.　Whether when they left, at the time of leaving, they stated that they were leaving on account of the fence.

A.　Yes, sir.

The jury returned a verdict in favor of the plaintiff in each case and the cases come to the Law Court on exceptions to the admission of the testimony above stated and to the foregoing instructions to the jury. The defendant also presents a motion to set aside the verdicts as against evidence.

The exceptions.

1.　In that part of the charge to which exceptions were taken, the Justice presiding instructed the jury that the plaintiff "had a right of access to the forty foot strip from his land, and a right of access to his land from the forty foot strip for the whole length of his eastern line north and south; that is he could get on to that forty foot strip from whatever part of his eastern line he saw fit . . . . and where it was possible to do so: . . . wherever feasible and he saw fit."

It appears from the copy of the entire charge, which is made a part of the bill of exceptions, that the jury had been previously instructed as follows: "He has a right of way over that strip; not merely a personal right of way that he himself can use, and nobody else, but a right of way as appurtenant to his hotel lot, his property there, his house; and that gives him the right that this right of way may be used by himself, his family, his servants, or his guests at the house, it being appurtenant to his property. Where his property goes that right goes with it. He is not entitled to use the whole strip unless necessary for the purposes of a way. If Mr. Dwight Braman leaves him a reasonable right of way within his rights, he cannot complain because other parts of that forty foot strip are used by other people or used in some other way. If Mr. Cleaves owned the Manor Inn at the north, at the end of this forty foot strip, and the right of way was appurtenant to the Manor Inn, then all that Mr. Cleaves would have would be a right of passage from the Manor Inn down through this forty foot strip to the coun-

ty road; not a right of way forty feet wide, but a reasonable width for proper, reasonable use as a way. It might be ten feet wide, it might be twenty feet wide, according to the purposes for which he desired to use it. If it was only for foot passengers, perhaps a way five or ten feet wide would be sufficient; if for heavy teaming, why wider. Then, if that were the case, and you should find that after all that had been done by Mr. Dwight Braman or anybody else, the Manor Inn man coming down there would have left a right of way sufficient, and that the width between those two stone piers was sufficient for a right of way, then, no matter what had been done outside of that reasonable right of way on that strip, the gentleman owning the right of way would not be interfered with.''

It is the opinion of the court that these instructions, considered together, clearly and correctly stated the law applicable to the controversy between the parties respecting the plaintiff's right of way on and over the forty feet strip in question. This avenue appears to have been specially wrought and adapted for use as a private way in 1888, immediately after the grant, and it was undisputed that it has been used for that purpose and for no other since that time. If the plaintiff had been the owner of Manor Inn, and as appurtenant to that property had acquired a right of way over the avenue in question, an essentially different problem would have been presented in regard to the alleged obstruction. Whether in that event the reference to the width of the land should be deemed a definite limitation of the width of the way, or only a description of the land over which the grantee would be entitled to such a way as might be reasonably necessary, would be a question involving little or no difficulty; and in all such cases the question must be determined with reference to the purposes for which the land granted might properly and conveniently be used and enjoyed, the situation of the respective estates and all the circumstances under which the grant was made tending to show what portion of the servient estate described it would be necessary to keep open and unobstructed in order to afford a way reasonably convenient and sufficient to accomplish the purpose. *Johnson* v. *Kinnicutt*, 2 Cush. 153; 14 Cyc. 1202. If the width of the way is not fixed by the

deed nor determined by the parties, it will be held to be a way of convenient width for all the ordinary uses of free passage.  *George* v. *Cox,* 114 Mass. 382.  And if the plaintiff at bar, in the case supposed, had acquired only a right of way along the avenue in question from Manor Inn to the county road, it might reasonably have been contended that a way fourteen feet in width, the distance between the stone pillars at the county road, would have been reasonably sufficient for all the uses of the plaintiff.  But in fact the relative situation of the estates was entirely different.  The plaintiff's property was not located at the end of this forty foot strip or avenue, but on the westerly side of it.  It adjoined it throughout the whole length of 160 feet.  The plaintiff's right of way was not acquired for the purpose of securing the privilege of traveling along this avenue from the county road to the Manor Inn.  He had no occasion to use the way for that purpose.  The grant was obviously obtained for the purpose of having a free and convenient passage from every feasible point on his lot to the forty feet avenue, and thence to the county road.  Instead of this the plaintiff found himself limited by the act of the defendant to the right of access at a single point through an aperture in the fence near the northerly end of the lot.  If it had been the intention of the parties to give the plaintiff such a restricted privilege, it is inconceivable that the grant would have been made in the general and comprehensive terms found in the deed.  It described the right of way "as appurtenant to the above described lots and said hotel lot."  If the plaintiff had divided his land into several house lots facing the forty feet avenue, the terms of the deed granting the right of way would undoubtedly have given to each lot as appurtenant to it, a separate passage way to the forty feet avenue and thence to the county road. There should be no more doubt that without such division of the lots, the plaintiff had a right of way at every point where the convenient enjoyment of his property made it necessary for him to pass.  Any other interpretation of the language of the grant would defeat the purpose of it and be wholly inadmissible.  See analogous cases *Rotch* v. *Livingston,* 91 Maine, 461 and *O'Brien* v. *Murphy,* 189 Mass. 353.

2. The exceptions to the admissibility of the declarations of the guests at the plaintiff's hotel made at the time of leaving and tending to show that they left on account of the fence, are not insisted upon by the defendants and are not mentioned in their argument. The ruling admitting this testimony was obviously correct. It was in accordance with elementary principles of evidence and is supported by a substantially uniform current of authority. 3 Wigmore on Evidence, sec. 1724. "Statements of motive as a reason for action" and sec. 1772 "Utterances constituting a verbal part of an act," and cases cited. "When the ascertainment of the motive with which an act is done becomes material, the declaration of the actor made at the time the act was done and expressive of its character and object, are regarded as verbal acts expressing a present purpose and intention and are admissible in evidence." 1 Green on Ev. 15th Ed. p. 161. "Such declarations made with no apparent motive for misstatement may be better evidence of the maker's state of mind at the time than the subsequent testimony of the same persons. Starkie on Ev. 10 Am. Ed. 80 ; Taylor on Ev. Vol. 2, p. 391-4. See also *Charley* v. *Potthoff*, Wis. 95 N. W ; 124; *Elmer* v. *Fessenden*, 151 Mass. 359 ; *Peirson* v. *Boston El. Ry.*, 191 Mass. 223 ; *Etna* v. *Brewer*, 78 Maine, 377.

It appears from the charge that the rights of the defendants were carefully guarded by appropriate instructions respecting the legitimate tendency and proper force and effect of this testimony as proof in the case, and it is the opinion of the court that the defendants were not aggrieved by its admission.

The motion.

In considering the defendants' exceptions, all the material facts have been stated showing the nature and extent of the obstruction of which the plaintiff complains. The fence had been standing twelve days before the commencement of these actions, and it still existed at the time of the trial. At the time it was erected the plaintiff had eighteen regular guests who were paying from twelve to fifteen dollars per week.

It was claimed that the fence was an obstruction which violated the plaintiff's rights ; that it was not only a source of great incon-

venience to him and his guests, but that it subjected him to substantial damage by causing guests to leave his house.

After a careful consideration of all the evidence in the case, it is the opinion of the court that the finding of the jury cannot be deemed erroneous respecting the defendant's liability, but the assessment of damages at $142.25 was not justified by the evidence, and must be declared excessive. If the plaintiff shall remit all of the verdict above fifty dollars within thirty days from the receipt of the certificate of this decision by the clerk of the Supreme Judicial Court for the county of Hancock, the motion for a new trial is overruled. In that event the plaintiff would be entitled to judgment for fifty dollars and interest against each defendant, but he would be entitled to only one satisfaction. The payment of one judgment would be a discharge of all.

If the plaintiff does not so remit, the entry must be,

*Motion sustained.*
*New trial granted.*