ANDREW WILLBAND *vs.* KNOX COUNTY GRAIN CO. ET ALS.

Knox.     Opinion March 19, 1929.

G. *Allen Howe*,
*Harry Manser*, for plaintiff.
*Locke, Perkins & Williamson*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, JJ.

WILSON, C. J.    This case originated in a bill in equity, and after a decree *pro confesso* had been taken against the Maine Central Railroad Company, a hearing was had upon the bill, answer of the Knox County Grain Company and replication and proof. From the decree of the presiding Justice sustaining the bill, the Knox County Grain Company appeals to this court.

The principal issue involved is the plaintiff's right to use for railroad switching service an easement of way, of which the center line was found by the sitting Justice to be the dividing line between the premises of the plaintiff on the north and the premises of the Knox County Grain Company on the south, in accordance with the provisions of an agreement for the use thereof entered into by and

between the predecessor in title of the plaintiff and the predecessors in title of the Knox County Grain Company ; and the plaintiff seeks to restrain the Knox County Grain Company from now removing or having removed the railroad track constructed by the Maine Central Railroad over and along said way.

The evidence is principally documentary and there seems to be very little in dispute between the parties as to any of the facts of the case which, so far as material to the decision of this case, are as follows : The premises now owned by the plaintiff and the premises now owned by the Knox County Grain Company, at one time comprised an entire undivided tract of land owned in fee simple by one L. N. Littlehale, who, while such owner, on November 14, A. D. 1908, entered into a written agreement with the Maine Central Railroad for the construction and operation of a spur track across the premises so owned by him. This spur track was thereafter constructed upon its present location on the face of the earth, and was used and operated by the Maine Central Railroad for the benefit of Littlehale and his tenants until December 31, 1910, when Littlehale by his deed of that date conveyed a portion of the premises so owned by him, viz. : that part or portion thereof lying southerly of the southerly track of the before mentioned spur track to the L. N. Littlehale Grain Company, which corporation by its deed dated December 31, A. D. 1913, conveyed all property acquired by it from Littlehale to one E. B. McAllister and one Ross L. Stevens upon certain trusts, but with power to convey by deed. Stevens resigned as such trustee and McAllister as the remaining trustee, by trustee's deed dated March 9, 1921, conveyed the property so conveyed to him in trust to one Charles M. Richardson and one Fred T. Studley ; and the L. N. Littlehale Grain Company by its deed dated March 9, 1921, given for the apparent purpose of confirming the title to the premises so conveyed by McAllister, trustee, conveyed to Richardson and Studley the same premises conveyed to them by McAllister, trustee, except that the northerly boundary line of the premises so conveyed is described as the center line of the spur track. The Knox County Grain Company thereafter by proper mesne conveyance acquired all of the premises so conveyed to Richardson and Studley.

On March 26, 1921, and while Littlehale was the owner in fee

simple of all of the premises lying northerly of the southerly line of the spur track and Richardson and Studley were the owners of all of the premises lying southerly thereof, Littlehale, as party of the first part and Richardson and Studley as parties of the second part, entered into a certain written agreement concerning the operation and use by them of said track, and in this agreement it is provided, "that whereas the aforesaid parties are owners in common of a right of way between property recently conveyed by parties of the first to the parties of the second part, and the Armour Building, so-called, owned by said party of the first part, said right of way being used by the Maine Central Railroad for a spur track used in common by parties of the first and second part, agree that said right of way shall not be disturbed or changed in any way by either party of the first or second part without the consent of both parties to such change, and that so long as either party may desire to use said right of way or any part of it for the purpose for which it is now used and has heretofore been used, neither party shall interfere in any way except by reason of necessity with the peaceable use of said right of way for the aforesaid purposes; and it is mutually understood that this agreement shall remain in full force perpetually and shall be binding upon our administrators, executors, successors or assigns until discontinued by mutual agreement." This agreement was duly recorded under date of March 28, 1921, in the Knox County Registry of Deeds.

After the premises lying southerly of the southerly line of the spur track had been conveyed to Richardson and Studley, the plaintiff became interested in the purchase of all the premises lying northerly of said spur track, but would not consummate a purchase thereof until the rights of Littlehale on the one part and Richardson and Studley on the other part in and to the use of the spur track had been fixed and determined by proper agreement, and after the spur track agreement dated March 26, 1921, had been duly executed and delivered and had been exhibited to the plaintiff and had been recorded in the Knox County Registry of Deeds, he accepted a conveyance from Littlehale of all the premises lying northerly of the center line of the spur track. In the deed from Littlehale to the plaintiff conveying this property to him dated March 26, A. D. 1921, certain easements were also conveyed de-

scribed therein as follows: "Also the free and uninterrupted use of the driveway on the easterly side of the Armour Building aforesaid, and the free and uninterrupted use of any and all other rights of way appurtenant or belonging to the premises herein conveyed, with particular reference to all rights in the right of way lying southerly of the aforesaid premises and occupied by the spur track of the Maine Central Railroad Company.

This deed from Littlehale to the plaintiff was duly recorded under date of March 30, 1921, in the Knox County Registry of Deeds, and the plaintiff claims that by virtue of the provisions of the spur track agreement dated March 26, 1921, an easement of way for spur track facilities was created, which, until terminated in accordance with the provisions of this agreement, would run as appurtenant to the land now owned by the plaintiff, and that such easement was assigned, transferred and conveyed to the plaintiff by virtue of the provisions of the deed from Littlehale dated March 26, 1921, and that the Knox County Grain Company at the time of the purchase of the property now owned by it had constructive notice of all of the plaintiff's rights so acquired by reason of these instruments being then duly of record in the Knox County Registry of Deeds.

It further appears, although Littlehale had assigned all of his rights and interests in the spur track agreement with the Maine Central Railroad dated Nov. 14, 1908, to the Knox County Grain Company by assignment dated April 1, 1921, that on and after December 10, 1910, the date of conveyance of the land owned by Littlehale lying southerly of the southerly line of the spur track, until the 12th day of March, 1923, this spur track was amicably used in common by Littlehale and the plaintiff as his successor in title on the one part, and by Richardson and Studley and their successors in title, including the Knox County Grain Company on the other part; that on the 12th day of March, 1923, the Knox County Grain Company notified the plaintiff that it had discovered that the plaintiff had "no valid right to spur track between the two properties" and notified the plaintiff to cease setting cars on same until these rights had been established. This notice was apparently ignored by the plaintiff, who continued to use the track for the benefit of himself and his tenants.

The original agreement with the Maine Central Railroad having been duly terminated and the Knox County Grain Company declining to renew the same or enter into another agreement with the Maine Central Railroad or with the plaintiff in regard to the further and continued use and operation of the spur track, the plaintiff under date of December 21, 1926, entered into an agreement with the Maine Central Railroad for the continued use of the spur track for supplying spur track service to the plaintiff and its tenants.

This latter agreement with the Maine Central Railroad provided, *inter alia*, not only for the same width of graded roadway as was contained in the original agreement with the Maine Central Railroad, viz.: of not less than 16 feet in width on excavations and 14 feet on embankments, but in addition provided for sufficient clearance space for the passage along the track of the cars of the Maine Central Railroad Company, which provisions for clearances the plaintiff alleges are the usual and proper requirements for clearances for spur tracks in similar situations and the usual requirements of the Maine Central Railroad.

The Knox County Grain Company then threatening to remove or cause to be removed so much of the spur track as was constructed and located over and upon its premises, the plaintiff proceeded by proper process for appropriate relief. The Knox County Grain Company, although admitting the ownership of the premises, with boundaries and acquisitions as hereinbefore set forth, and the execution, delivery and existence of the spur track agreement dated March 26, 1921, contends:

That the plaintiff is not before the court with clean hands;

That the spur track agreement dated March 26, 1921, did not create an easement that would run as appurtenant to the land now owned by the plaintiff;

That whatever rights of way or otherwise the plaintiff acquired under the deed from Littlehale to him dated March 26, 1921, such rights were only those created by and existing under the terms and provisions of Littlehale's agreement with the Maine Central Railroad Company dated November 14, 1908;

That if the plaintiff by the provisions of the spur track agreement dated March 26, 1921, and the deed from Littlehale to him

·dated March 26, 1921, acquired any easement over and upon ·the land now owned by the Knox County Grain Company, he did not acquire an easement greater in extent or use than the one existing on March 26, 1921, the date of the execution and delivery of the spur track agreement, and that the clearance provisions of the plaintiff's contract with the Maine Central Railroad dated December 21, 1926, provides for the use of such easement to a greater extent.

That the agreement entered into by and between the plaintiff and the Maine Central Railroad Company dated December 21, 1926, is preferential and therefore in violation of the terms and provisions of the Interstate Commerce Act, Chap. 104, Sec. 3, 24 Stat. 380, as amended February 28, 1920, U. S. Compiled Statutes (1926), Chap. 49, Sec. 3.

We will consider these defenses interposed by the Knox County Grain Company in order as set forth above.

The Knox County Grain Company says that the plaintiff is not in court with clean hands and submits citations from many decisions in support of the well-known maxim that "He who comes into equity must come with clean hands," and directs the attention of the Court to excerpts from the testimony wherein it appears that the plaintiff on March 26, 1921, was and for a long time prior thereto had been engaged in a business of similar kind and character to the business then carried on by Richardson and Studley; that the plaintiff or corporations in which he was a stockholder and an officer thereof, were creditors of the L. N. Littlehale Grain Company, of which "Littlehale was the principal owner," and that they had been insisting upon payment of the account then due and owing from said L. N. Littlehale Grain Company; that the plaintiff knowing, as the Knox County Grain Company alleges, that Richardson and Studley would not enter into an agreement relating to the use of the spur track, if they appreciated the fact that they were to have a competitor "next door," insisted that Littlehale should obtain such an agreement before the plaintiff would ·purchase from Littlehale the premises conveyed to him by deed dated March 26, A. D. 1921.

The Knox County Grain Company, also in connection with this matter, calls the attention of this court to a certain non-competing

agreement, so called, which was entered into under date of March 9, 1921, by and between Littlehale and the L. N. Littlehale Grain Company on the one part, and Richardson and Studley on the other part, whereby, in brief, it was agreed that Littlehale and the L. N. Littlehale Grain Company would not directly or indirectly enter into or engage within a limited time and territory in any business in competition with that then carried on and conducted by Richardson and Studley, which agreement was thereafter duly assigned to the Knox County Grain Company, but as the Knox County Grain Company admits that the plaintiff did not have any knowledge of this non-competing agreement at the time the spur track agreement dated March 26, 1921, was executed and delivered, this court is of the opinion that any rights acquired by the Knox County Grain Company or its predecessors in title under the provisions of this agreement can not be of avail to it in this instance.

Moreover, after a careful examination of all the acts and conduct of the plaintiff in connection with this matter as set forth in the evidence, this court deems such acts and conduct as merely those of ordinary care and prudence, and that they did not approximate that unjust, unfair, unreasonable, unconscionable or inequitable conduct which has induced courts of equity to withhold their aid from those, seeking relief therein, guilty of such conduct.

This court is further of the opinion that the spur track agreement dated March 26, 1921, did create an easement which until terminated in accordance with the provisions thereof would run as appurtenant to the land now owned by the plaintiff. No other interpretation can be put upon the language set forth in this agreement. *Douglass* v. *Riggin*, 123 Md., 18. No uncertainty or doubt can arise as to the intention of the parties where the parties have expressly declared that "this agreement shall remain in full force perpetually and shall be binding upon our administrators, executors, successors and assigns until discontinued by mutual agreement." Any other interpretation would be in violation of the common and ordinary understanding of the language set forth and contrary to the plain intent of the parties so expressed. In *Whitney* v. *Union Railway*, 11 Gray, 359, cited with the approval of this court in *Herrick* v. *Marshall*, 66 Me., 435-439, the court says:

"When, therefore, it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right in the nature of a servitude or easement in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land."

The claim of the Knox County Grain Company to the effect that the deed from Littlehale to the plaintiff conveyed in addition to the land therein described only such rights as Littlehale might have acquired under the terms and provisions of his agreement with the Maine Central Railroad Company dated November 14, 1908, is entitled to but brief consideration on our part, for it is plainly evident from an examination of the provisions of the deed from Littlehale to the plaintiff that the parties intended that the easement of way created under the spur track agreement dated March 26, 1921, was to be conveyed and not the transient use and occupation thereof.

Consideration has been given to the contention of the Knox County Grain Company that if the plaintiff acquired any easement of way over and upon the land now owned by the Knox County Grain Company by reason of the provisions of the spur track agreement dated March 26, 1921, and by deed from Littlehale to the plaintiff dated March 26, 1921, he did not acquire an easement greater in extent or use than the one existing on March 26, 1921, the date of the execution and delivery of the spur track agreement.

This court is familiar with the decisions of the courts of other states wherein it has been held that where a grant creating an easement is silent as to its use and limits, and a right of way at the place prior to the grant has been used for the purposes mentioned or intended in the grant, in such circumstances the limits of the way then existing are frequently adopted as the limits of the way granted. An examination, however, of these decisions shows that there were existent on the face of the earth at the time of the grant creating such way, certain natural boundaries or demarcations defining a right of way then existing, and the courts have held

in such cases that it was the intention of the parties to the grant that these boundaries or demarcations should be the limitations of the granted way.

Although we do not find any case exactly in point, we are of the opinion that the true rule applicable to the question immediately under consideration has been expressed by the courts in decisions upon questions submitted to them analogous to that now under consideration, extracts from which decisions, so far as pertinent, are as follows:

"But in those cases where there has existed no previous passage or way that can be regarded as in contemplation of the parties, then the intent of the parties must be determined by the condition of the property and the uses to which the property is to be put, and it will be held that such a way was in contemplation of the parties as was reasonably necessary and proper for the intended uses." *Barber* v. *Allen*, 212 Ill., 125.

"Where the width of a road or way granted be not defined in the deed, it will be construed to be a grant of so much as is reasonable for the purposes for which it is granted." *Davis* v. *Watson*, Appellant, 89 Mo. App., 15.

"It is well settled that where the grant of a road or way is silent as to its width, it will be held to be of the width suitable and convenient for the ordinary uses of free passage to and from the granted land, and if the particular object of the grant is stated the width must be suitable and convenient with reference to that object." *Drummond* v. *Foster*, 107 Me., 401-404; *Atkins* v. *Bordman*, 2 Met., 457.

"When an easement arises from unrestricted grant or reservation, the measure of right or use is its availability for every reasonable use to which the dominant estate may be devoted, which may vary from time to time with what is necessary to constitute full enjoyment of the premises." *Mahon* v. *Tully*, 245 Mass., 571.

We are, therefore, of the opinion that when an easement of way is created by express grant, reservation or exception, and the purpose or purposes for which it is to be used are set forth, but it is not otherwise limited or defined and no way is existent with definite limitations or boundaries upon the face of the earth where the proposed way is to be located, that it was within the contem-

plation of the parties creating such an easement that the limits of said way should be such as might from time to time be reasonable, suitable and convenient for the particular objects of the grant.

' To apply this rule to the instant case, we hold that whereas there is no dispute between the parties as to the particular objects of the grant, viz.: railroad side track facilities, it was within the contemplation of the parties that the spur track should be used in every suitable and convenient way to give the parties reasonable side track facilities, and that its use might vary from time to time to conform to the reasonable rules and regulations of the Maine Central Railroad, or such other railroad company or carrier as might operate or run its trains or cars over and along the way for the benefit of the parties or either of them.

It is true that the servient tenement can not be burdened with the occupation of a greater width than is reasonably necessary for the use for which the right of way is granted, but as the presiding Justice in this case has found that the width of the clearances provided for in the contract between the plaintiff and the Maine Central Railroad dated December 21, 1926, are reasonable, and his decision on this matter being a finding of fact, is not to be reversed upon appeal unless clearly wrong, and as the appellant upon whom is the burden has not convinced us that this finding of the presiding Justice is clearly wrong, we hold that the present use of the easement by the plaintiff in conformity with the provisions of his contract with the Maine Central Railroad dated December 21, 1926, is in accordance with the rights heretofore acquired by him.

This court is not the proper tribunal to which, in the first instance, the alleged preferential nature of the contract between the plaintiff and the Maine Central Railroad Company dated December 21, 1926, should be submitted, for it is to be noted that it is not every discriminatory preference and prejudice which is declared illegal by the United States Commerce Act, but only those that are undue and unreasonable. Mr. Justice Brandeis in discussing certain disputed questions arising under the construction of the commerce act in *Great Northern Railroad* v. *Merchants Elevator Co.*, 259 U. S., 291, has said:

"Whenever a rate, rule or practice is attacked as unreasonable

or unjustly discriminatory, there must be preliminary resort to the commission."

Chief Justice Taft also has said in the case of *Western & Atlantic Railroad, Apt.* v. *Ga. Pub. Service Commission,* 267 U. S., 493: "The question whether the continuation of the service on this industrial track violates the interstate commerce act as unduly discriminatory, is one that involves issues not primarily for the Court, but is for the interstate commerce commission."

*Appeal dismissed: Decree affirmed with additional costs.*