Jesse P. WARE

v.

## PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.

Supreme Judicial Court of Maine.

March 14, 1980.

McEachern & Thornhill by Dan W. Thornhill, Kittery, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by Everett P. Ingalls, Portland (orally), for defendant.

Before WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

This is an appeal by the plaintiff, Jesse P. Ware, from a judgment of the Superior Court, York County, denying him injunctive relief and damages against Public Service Company of New Hampshire (Public Service) in connection with the erection of poles by the public utility and the intended maintenance of electric wires in and over a private way owned by the plaintiff, the defendant's alleged trespass being at the request of abutting owners on the reference private way. We deny the appeal and affirm the judgment of the Superior Court.

Island Acres, Inc. (Island Acres) was the common owner of the land presently owned by the plaintiff Ware and Malcolm Mellor and Valerie Anne Galton (Mellor and Galton), abutters on Tower Road, so-called. In

1950 Island Acres recorded a subdivision plan of its substantial real estate holdings on Gerrish Island in Kittery Point, Maine. The plan delineated some seventy-three (73) house lots, fifty-nine of which were bisected by the Tower Road (thirty-two being to the north of the road and twenty-seven to the south). The plan showed that Tower Road intersected Goodwin Road at its westerly terminus.

In 1958, Island Acres, by reference to the subdivision plan, conveyed twenty-two lots to Theodore and Marilyn Curtis, including lots numbered 427, 428 and 429, situated on the northerly side of Tower Road. These three lots through mesne conveyances became the property of Malcolm Mellor and Valerie Anne Galton by deed dated April 3, 1973.

The Curtis deed conveyed the following easement right:

"Granting and conveying *the right to use, for all purposes, a way or road known as the* Goodwin Road and *Tower Road*, so-called, leading from the Goodwin Road to the lots herein conveyed." (Emphasis supplied)

The intervening deeds as well as the deed to Mellor and Galton contained identical language.

In 1965, Island Acres conveyed by metes and bounds one large parcel of land, situated on Gerrish Island, to Clark B. and Mildred J. Bristol. The deed contained the following "exception and reservation" worded as follows:

"Excepting and reserving from this conveyance 40 feet right-of-way for Tower Road, and 20 feet for one half the width of Goodwin Road to whomsoever may have these rights and for future acceptance by the Town of Kittery of either or both of these Roads, such rights of way being on centerlines (sic) of said Roads as now platted of record."

In 1970, the plaintiff purchased a portion of the Bristol property, including land lying on the southerly side of the Tower Road on which he maintains a home. His deed carried the identical "exception and reservation" in regards to the Goodwin and Tower Roads which the Bristol deed had.

In the year following their 1973 land purchase on Tower Road, Doctors Mellor and Galton requested Public Service to furnish them electrical service for their building on Gerrish Island. At the utility's suggestion, the doctors executed an easement deed acknowledged November 26, 1974 which granted Public Service permission "as owners of a prior easement" to bring in the service "over, under, and across the right-of-way known as Tower Road on Gerrish Island, so-called, in Kittery," the extension to start at Public Service's distribution pole # 148/6 on Tower Road. This stated pole was the last one of the existing distribution system on Tower Road and was situated across the road from the plaintiff's residence. Public Service had entered, cut down some timber, and put three poles in place when the instant action was commenced.

 Public Service justifies its actions in Tower Road either under license or assignment in part of their easement rights by Mellor and Galton.[1] If Mellor and Galton, by reason of their easement privileges in Tower Road, have the right to erect poles along the road and to have wires strung on those poles for the transmission of electricity to their abutting property for the purpose of providing their building with electrical facilities, then the implementation of that right by Public Service at the request of the owners of the easement would nullify the concept of trespass and be a valid defense thereto. If the principal be not a trespasser, his agent acting with his authority would not be also. This is the converse of the doctrine that if the principal is a wrongdoer, the agent is a wrongdoer too. See *Kimball v. Billings*, 55 Me. 147, 151 (1867). See also *Davis v. Jefferson County*

---

1. We need not concern ourselves with the difference between a license or an easement. Either in the instant case would clothe the licensee or easement grantee with the rights of the licensor or grantor. The differences are often slight. See *Reed v. A. C. McLoon & Company*, Me., 311 A.2d 548, 552, n. 7 (1973).

Telephone Co., 82 W.Va. 357, 95 S.E. 1042, 1044 (1918); Kelly v. Schmelz, 439 S.W.2d 211, 214 (Mo.App.1969).

The issue is, whether the grant of the right to use, for all purposes, the road known as Tower Road included the right to erect poles along that road on which may be strung wires for the transmission of electricity to and from the Mellor-Galton habitation? We answer in the affirmative.

Some courts have adopted the rule that where a right of way is granted or reserved without limit of use it may be used for any purpose to which the land accommodated thereby may naturally and reasonably be devoted. Abbott v. Butler, 59 N.H. 317 (1879). Under this rule, the grant or reservation of an easement of right of way in general terms has been construed as creating a general right of way for all reasonable purposes, including the right to set poles and string wires over and along the way so as to carry electricity or telephonic communications. Dowgiel v. Reid, 359 Pa. 448, 59 A.2d 115 (1948); Davis v. Jefferson County Telephone Co., 82 W.Va. 357, 95 S.E. 1042 (1918); Fleming v. Napili Kai, Ltd., 50 Haw. 66, 430 P.2d 316 (1967); Kelly v. Schmelz, 439 S.W.2d 211 (Mo.App.1969).

The Massachusetts court, on the other hand, in the absence of special language creating broader rights, has construed the grant of a general right of way in a private way as an easement limited to purposes of travel which does not include the right to install utilities. Nantucket Conservation Foundation, Inc. v. Russell Management, Inc., 2 Mass.App. 868, 316 N.E.2d 625 (1974); Ward v. McGlory, 358 Mass. 322, 265 N.E.2d 78 (1970).

 In the present case, we are not dealing with the grant of an easement or right of way in general terms without statement of purpose. It is not merely the grant of an easement or right of way for the purpose of a road, which might be construed as conveying the right to use the road for purposes of travel only (as to which we intimate no opinion), but, as expressly stated, the deed granted the right to use for all purposes the existing road

known as the Tower Road. If the deed specifies the particular purpose for which the easement or right of way is granted, then the grantee cannot use it for other purposes. While the use cannot be enlarged beyond the scope intended by the parties as manifested by the natural meaning of the stated terms of the grant, yet, deeds will not be so narrowly construed as to prevent the beneficial use by the grantee of what is granted, in the manner and for the purposes fairly indicated by the easement grant as interpreted under all the circumstances existing at the time of the execution of the deed. Abbott v. Butler, supra.

 In the instant case, the easement is the right to use Tower Road for all purposes. This all-inclusive purpose clause, without more specificity, must be construed in accordance with the presumed intentions of the parties. These are to be determined in the light of the circumstances surrounding and leading to the execution of the deed, here the Curtis deed, such as the relation and condition of the parties, the nature and situation of the property, dominant and servient, and the apparent purpose behind the easement grant, with the general rule in mind that the grantee of an easement, although restricted in his enjoyment of the right to the extent of the legitimate meaning of the grant, may take any action reasonably necessary to insure the full enjoyment of the right. Gendron v. Central Maine Power Company, Me., 379 A.2d 1002, 1005 (1977); Perkins v. Perkins, 158 Me. 345, 184 A.2d 678 (1962).

Our Court has said in Willband v. Knox County Grain Co., 128 Me. 62, 71, 145 A. 405 (1929):

"When an easement arises from unrestricted grant or reservation [here, for all purposes], the measure of right or use is its availability for every reasonable use to which the dominant estate may be devoted, which may vary from time to time with what is necessary to constitute full enjoyment of the premises."

See also Beckwith v. Rossi, 157 Me. 532, 175 A.2d 732 (1961).

Obviously, since the Curtis deed conveyed house lots by specific reference to a subdivision plan indicative of an intended housing development by Island Acres and specifically restricted the property to buildings for residential purposes, it follows logically from the granting of the right to use Tower Road for all purposes that the parties contemplated the owners of the several lots delineated on the plan to which the right to use Tower Road was appurtenant should be able to exercise that right to the full extent necessary for the reasonable and natural enjoyment of the premises and of any residence erected thereon. In 1958, the days of the lamp for most Americans in these United States including the State of Maine were only a memory. The current lifestyle necessitated the use of electric lights, electric washing machines, electric cooking stoves, electric radios and all kinds of electric household appliances. It is only reasonable to conclude that the parties did contemplate that the purchasers of any of the residential lots which Island Acres was selling would have the right to have electricity brought into their homes through Tower Road, the right to the use of which was made appurtenant to all abutting house lots. Anything less would make their residences unlivable according to the standards to which people then were accustomed.

If the parties had intended otherwise, it would seem unlikely they would have granted an easement in such broad terms as the right to use Tower Road for all purposes; rather, they would have restricted its use in language of more limited meaning. See *Cleaves v. Braman*, 103 Me. 154, 68 A. 857 (1907). The case of *Englishmans Bay Company v. Jackson*, Me., 340 A.2d 198 (1975), is not controlling as the issue in this case was not raised on appeal in that case.

The entry will be:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and POMEROY and ARCHIBALD, JJ., did not sit.