FINE LINE, INC.

v.

**Paul BLAKE, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 17, 1996.
Decided June 13, 1996.

Peter A. Anderson, Bangor, for Plaintiff.

June A. Jackson, Rudman & Winchell, Bangor, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

DANA, Justice.

Paul and Patricia Blake appeal from a judgment entered in the Superior Court (Penobscot County, *Alexander, J.*) enjoining them from interfering with Fine Line, Inc.'s use of its right of way over their property, from making any threats to persons utilizing the right of way, and from entering onto or interfering with the use of Fine Line's land. The Blakes contend that the court erred in

holding that the right of way was unrestricted, in concluding that they committed a trespass, and in awarding attorney fees to Fine Line. We agree and vacate the judgment.

In 1975 the common grantor of the parties, Mount Jefferson Ski & Recreation Association, Inc., conveyed a 90 acre parcel of land in Lee to Quentin Smart. The deed contained a fifty foot right of way to the parcel from Thomas Hill Road across property now belonging to the Blakes. In 1979 Mount Jefferson conveyed the servient estate to the Blakes but the deed made no mention of the right of way burdening their property. Quentin Smart conveyed his parcel to Diane Smart who conveyed it to Fine Line. Sterling Osgood, the president of Fine Line, testified that Fine Line's purpose in purchasing the land was to create a fourteen lot subdivision using the right of way as access.

The Blakes first learned of Fine Line's right of way when Fine Line began building a road to harvest the timber on the lot. The Blakes did not object to Fine Line's use of the right of way for that purpose. In 1990, however, the Blakes blocked the right of way with a vehicle. Osgood testified that Paul Blake told him that Fine Line could not use the road and could not repair it, and if it tried its equipment would be damaged. A member of the Lee Planning Board testified that as a result of Fine Line's request for approval of a subdivision an inspection of the land was conducted. He stated that the Board was not able to use the right of way for access because at a planning board meeting Paul Blake threatened to shoot anybody that went across his property.

In 1991 the Blakes placed a locked gate across the right of way. In order to use the right of way Fine Line had to seek the Blakes' permission through their attorney. Osgood testified that the Blakes never denied Fine Line permission but limited the times that it could use the right of way due to noise. The right of way is close to the Blake's house and the Blakes can see and hear vehicles traveling on the right of way.

In 1991 Fine Line commenced an action to enjoin the Blakes from interfering with its right of way, to remove the gate blocking access to it, and to obtain damages. The Blakes counterclaimed, seeking a declaration of the scope of Fine Line's right of way. Following a nonjury trial the court concluded that the right of way was unrestricted and included the right to construct a road, maintain it, and utilize it to provide access and utility services to Fine Line's land. The court granted an injunction enjoining the Blakes from interfering with Fine Line's right of way, from making threats against any person or property utilizing the right of way or Fine Line's land, and from entering upon or interfering with the use of Fine Line's land. The court awarded $10,000 as damages and $15,000 in attorney fees.

I.

The Blakes contend that the court erred in determining that the deeded right of way was unambiguous and unrestricted and included the right to install utilities. They argue that the court erred in failing to consider evidence of the intent of the original grantor and grantee of the right of way and the adverse effects that the proposed use of the right of way as access to a subdivision would have on the servient estate.

The right of way at issue is described in the original deed as follows:

> a ... right of way fifty feet in width from the Thomas Hill Road to lot 10, Range 3. The south boundary of said right of way is to be the northerly line of a lot of land owned by....

The court determined that because the deed did not state any specific limitations on its use it was an unrestricted right of way that included the right to use it to provide both access and utility services to Fine Line's land. The court further concluded that because it was an unrestricted right of way it could not be overburdened.

The construction of language in an easement deed is a question of law that we independently review. *Northern Utils., Inc. v. City of South Portland*, 536 A.2d 1116, 1117 (Me.1988). "The scope of an interest in land conveyed by deed is determined solely from the language of the deed, if that language is unambiguous." *Rancourt v. Town of Glenburn*, 635 A.2d 964, 965 (Me.1993). If

the language of a deed is ambiguous, a court may consider extrinsic evidence to determine the parties' intent. *Northern Utils., Inc.,* 536 A.2d at 1117; *see also Badger v. Hill,* 404 A.2d 222, 225 (Me.1979) (although language of deeds may be unambiguous they did not go far enough in areas critical to an evaluation of scope of the right of way, therefore consideration of extrinsic evidence was warranted).

■ "When the purposes of an express easement are not specifically stated, a court must 'ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the execution of the conveyance,'" *Rancourt,* 635 A.2d at 965 (original developer's site plan showing rights-of-way was evidence of parties' intent) (quoting *Englishmans Bay Co. v. Jackson,* 340 A.2d 198, 200 (Me.1975) (in determining scope of a deeded right of way where its contemplated use is not delineated, a party's subjective intent is not determinative, rather the issue is the parties' intention as it had been objectively manifested)). In *Englishmans Bay Co.* we held that in concluding that at the time the right of way was granted the parties intended that it would include vehicular travel the trial court properly relied on evidence that the roadway had been used for woods-cutting operations for a period of years recently prior to the grant of the right of way. *Englishmans Bay Co.,* 340 A.2d at 200.

The scope of a deeded right of way is not necessarily unlimited. *See Davis v. Bruk,* 411 A.2d 660, 666 (Me.1980) (permission to pave right of way was properly denied because it may be an added burden on the servient estate). Even a right of way "for all purposes" does not automatically include the right to install utility lines. In *Saltonstall v. Cumming,* 538 A.2d 289, 290–91 (Me.1988), we held that language in a deed granting a "right-of-way for all purposes of a way" could not, as a matter of law, be interpreted to include or exclude the right to install utility lines along the length of the right of way.[1] We concluded that whether the original parties to the grant intended that the scope of the easement be broad enough to include the right to install utilities is a question of fact precluding summary judgment. *Id.* at 291. In *Ware v. Public Serv. Co.,* 412 A.2d 84, 86–87 (Me.1980), however, we held that a grant to owners of property in a subdivision of the right to use, for all purposes, a private road that was appurtenant to the approved residential subdivision at the time the right of way was granted, included the right to install utilities along that road. We considered the broad language of the deed in light of the circumstances surrounding the grant in determining that the parties intended the right of way to include the right to install electricity to these residences. *Id.* We did not, however, hold that the right to install utilities should be an implied use of a right of way absent circumstances surrounding the grant supporting that conclusion.

*Ware* is factually distinguishable from the instant case. The right of way at issue in the instant case was granted to access a wood lot long before any subdivision was proposed and approved. There was no evidence that the original parties to the grant of the right of way intended it to be used for access to a subdivision or to provide utility services to the grantee's land. The president of Mount Jefferson, Bernard Staples, testified that prior to selling the land to Quentin Smart in 1975 he knew that Smart was a logging and wood contractor and that the land had significant tree growth. Staples also testified that he took back a mortgage from the Smarts that provided that they would apply half of any stumpage received from wood operations towards paying for the land. Staples also testified that he believed that Smart would be cutting the wood on the property based on the fact that he was a wood contractor.

1. We note that the Legislature has attempted to clarify the issue as to the right of an owner of a right of way to install utility services by providing that an owner of an easement or right of way does not have an implied right to install utility services on or under the right of way if the right of way is originally established in a written instrument executed on or after January 1, 1990 and the instrument granting or reserving the right of way does not expressly provide the right. 33 M.R.S.A. § 458 (Supp.1995). In this case, however, the right of way was originally established in the deed from Mount Jefferson to Quentin Smart in 1975.

▮ Whether the parties to the original deeded right of way intended that it would be used as access to a subdivision and for the installation of utilities could not be determined from the language of the deed. Given the evidence of "the objectively manifested intention of the parties" the court could not conclude as a matter of law that the right of way was unrestricted and included the right to install utilities. On remand the court may choose to receive additional evidence of the parties "objectively manifested" intent.

## II.

The Blakes contend that the court erred in holding that their alleged obstruction of the right of way constituted a willful trespass. Fine Line's complaint sought injunctive relief and damages for obstruction of its right of way. Its trial brief did not include trespass among the issues to be decided at trial. Also, it does not clearly appear from the record that both Fine Line and the Blakes consented to a trial of the trespass issue pursuant to M.R.Civ.P. 15(b). *Midland Fiberglass, Inc. v. L.M. Smith Corp.*, 581 A.2d 402, 404 (Me.1990). The court nevertheless concluded after the close of the evidence that the obstruction of the right of way constituted a wilful trespass and awarded Fine Line attorney fees in the amount of $15,000 pursuant to the "trespass statute."

▮ Courts can award attorney fees only when authorized by statute, when the parties have so agreed, or for certain tortious conduct. *F.D.I.C. v. Proia*, 663 A.2d 1252, 1255 (Me.1995). Title 14 M.R.S.A. § 7552 (Supp.1995) is the only trespass statute that authorizes an award of attorney fees.[2] This statute is inapplicable to the instant case because it applies only when the trespasser has damaged property or carried property away from land the trespasser does not own. 14 M.R.S.A. § 7552. The Blakes are the owners of the land over which Fine Line's right of way is located and there is no evidence that they destroyed or carried away property. Further, a wrongful obstruction of a right of way is a private nuisance not a trespass. *See Graham v. Lowden*, 137 Me. 48, 50, 15 A.2d 69, 71 (1940) ("[T]he obstruction of a right of way which is a mere easement is ... a common-law nuisance."); *Sutherland v. Jackson*, 32 Me. 80, 85 (1850) (obstruction of private way is a private nuisance). Therefore, the court erred in awarding attorney fees.

## III.

▮ Fine Line also contends that the court's award of attorney fees can be sustained on the basis of punitive damages for Paul Blake's threatening to shoot people on his property. Punitive damages are available if the plaintiff can establish by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or was so outrageous that malice is implied. *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995). The pleadings, however, did not assert a claim for punitive damages and the issue of punitive damages was not tried by consent pursuant to M.R.Civ.P. 15(b). Indeed the court stated that there was no request for punitive damages and that it was not going to award them.

The entry is:

**2.** Title 14 M.R.S.A. § 7552 (Supp.1995) states in relevant part:

**2. Prohibitions.** Without permission of the owner a person may not:

**A.** Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own;

**B.** Damage or throw down any fence, bar or gate, or leave a gate open, or break glass or do other damage to any structure on property not that person's own; or

**C.** Disturb, remove or destroy any lawfully established transit point, reference point, stake, ... or other engineering location or survey or any such monument marking the bounds of public or private property....

**5. Costs and fees.** In addition to damages, interest and costs, the owner may also recover from the person who violates subsection 2 the reasonable costs of professional services necessary for determining damages and proving the claim, provided that the person first has written notice or actual knowledge that a claim is being asserted. The amount awarded for professional services may not exceed 50% of the damages recovered pursuant to subsection 4 plus interest on the damages....

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.