1997 ME 120

**Patricia Morrison GUILD**

v.

**James HINMAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 24, 1997.

Decided May 29, 1997.

---

Jonathan G. Rodgers, Weeks & Hutchins, Waterville, for plaintiff.

James A. Hopkinson, David C. Webb, Hopkinson & Abbondanza, P.A., Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

DANA, Justice.

[¶ 1] James Hinman appeals from the judgment entered in the Superior Court (Cumberland County, Mills, J.) after a nonjury trial concluding that the scope of Hinman's right of way over Patricia Morrison Guild's property does not include the right to install utility lines. Hinman contends the court erred when it found that the parties to the original conveyance creating the right of way did not contemplate that the property would be used for residential purposes. We affirm the judgment.

[¶ 2] Guild owns land abutting the Lambert Road in Freeport. Except for the cleared land surrounding her house, the rest of her property is wooded. Hinman owns property adjoining Guild's land, and there is a right of way over Guild's property that runs from Lambert Road to Hinman's parcel. The right of way across Guild's property originally appeared in a 1923 deed conveying what is

now Hinman's parcel; the deed provided "a right of way of reasonable and convenient width." Hinman's deed from 1986 contains a similar provision. In the late 1980s, Hinman decided to build a single family residence on his property and brought in a company to upgrade the right of way and install utility lines over the way. Guild filed a complaint seeking a declaratory judgment that the installation of power lines would exceed the scope of the right of way conveyed in 1923.

[¶ 3] At the trial the parties presented testimony about the historical uses of the Hinman and Guild properties and the right of way. Emily Smith, a local resident who remembered the use of Hinman's land by the original grantee of the right of way, testified that the grantee used the property in the late 1920s for growing vegetables and accessed the land over the right of way with a horse and wagon. David Smith, a local resident and former owner of Hinman's land, testified that the parcel was used for growing hay in the 1930s and that the right of way was used to transport the hay to Lambert Road. About 25 years later Smith logged the property and hauled wood over the right of way. Smith built a camp on the land in the early 1970s and used it for hunting and fishing.

[¶ 4] The court concluded that Hinman did not have the right to install utility lines along the right of way because the court could not, on the evidence presented, find "that the original grantor and grantee intended the use now contemplated by [Hinman]." The court found that the only evidence of the original parties' use of the easement was for farming purposes and there was no evidence that the original parties contemplated a permanent residence on Hinman's land.

[¶ 5] Hinman contends that the trial court erred by prohibiting him from installing utility lines because the language in the deed creating the right of way is unrestricted and because he, as the owner of the dominant

estate, has a right to take any action reasonably necessary to ensure the full enjoyment of the right of way. He also argues that the court should not have looked to the use of the land after the creation of the right of way in 1926 to determine the intended purposes of the way.

 [¶ 6] "The scope of a deeded right of way is not necessarily unlimited." *Fine Line, Inc. v. Blake,* 677 A.2d 1061, 1064 (Me.1996). See also *Davis v. Bruk,* 411 A.2d 660, 666 (Me.1980) (expressly granted right of way, without more, did not give grantee the right to pave the way because such a material change might give rise to added burden on servient estate). "Even a right of way 'for all purposes' does not automatically include the right to install utility lines." *Fine Line,* 677 A.2d at 1064. See also *Saltonstall v. Cumming,* 538 A.2d 289, 290–91 (Me.1988) (deed conveying right of way "for all purposes of a way" could not, as a matter of law, be interpreted to include or exclude the right to install utility lines). When "the purposes of an express easement are not specifically provided, they are to be determined by the presumed intent of the parties at the time the grant is made." *Id.* at 290 (citations omitted). Thus, the conveyance of a general right of way may include the right to install utility lines if the circumstances surrounding the grant establishes that such use is within the scope of its intended purposes. See *Ware v. Public Serv. Co. of N.H.,* 412 A.2d 84, 85, 86–87 (Me.1980) (granting of "the right to use, for all purposes, a way or road," together with the fact that property conveyed was in residential subdivision developed in 1950s, created right to install electric utility lines along right of way); *Fine Line,* 677 A.2d at 1064 (deed granting right of way "fifty feet in width" did not necessarily include right to install utility lines; trial court must look to circumstances at the time of conveyance, such as type of use of the property).[1] The use of an easement "may

---

1. The Legislature has provided rules of construction for easements created after 1990. 33 M.R.S.A. § 458 (Supp.1996) provides:

**1. Easements or rights-of-way established on or after January 1, 1990.** The owner of an easement or right-of-way does not have the

right by implication to install utility services on or under the easement or right-of-way if:

 A. The easement or right-of-way is originally established in a written instrument executed on or after January 1, 1990; and

 B. The instrument granting or reserving the easement or right-of-way does not ex-

vary from time to time with what is necessary to constitute full enjoyment of the premises[,]" *Willband v. Knox County Grain Co.,* 128 Me. 62, 71, 145 A. 405 (1929) (quotations omitted), and an express easement may accommodate modern developments. See *Stevens v. Anderson,* 393 A.2d 158, 159 (Me. 1978). Any changes in use, however, must be consistent with the purpose for which the easement was originally granted. *Id.* (right of way granted in 1915 for "cattle, teams and foot passengers" did not necessarily exclude travel by car when language indicated intent to allow all modes of common travel at time of grant); *Ware,* 412 A.2d at 86.

[¶ 7] The trial court must ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the conveyance, *Fine Line,* 677 A.2d at 1064, such as the relation of the parties, the nature and situation of the dominant and servient property, and the apparent purpose behind the grant. *Ware,* 412 A.2d at 86. We will uphold the trial court's determination regarding the objective manifestation of the parties' intent unless it is clearly erroneous. *See Englishmans Bay Co. v. Jackson,* 340 A.2d 198, 200 (Me.1975).

[¶ 8] There is competent evidence in the record to support the court's finding that the parties to the original conveyance creating the right of way did not contemplate that the land would be used for residential purposes and that they did not contemplate that the right of way would be used for services necessary to support a residence. According to the witnesses' testimony, Hinman's land at the time of the conveyance was used for agricultural purposes and, later, timber harvesting. Not until almost 50 years after the creation of the right of way was a seasonal cabin constructed on the property. The use of the property for agricultural and logging purposes supports the court's conclusion that the parties did not contemplate residential use of the property.

[¶ 9] Although Hinman correctly asserts that there was no evidence showing the use of the property in the years prior to the conveyance of the right of way from pressly include the right to install utility ser-

which the court could have determined the parties' intent, the court properly looked to the use of the land in the years shortly after the original grant to Hinman's predecessors. To determine the objectively manifested intent of the parties, a court may consider the

practical construction which the parties placed upon [the deed] by their conduct, by acts done by one party and acquiesced in by the other, especially when such conduct is proven to have continued for a long time.... [T]he proved conduct of the parties is sometimes of great importance in the case of ancient grants, when other evidence of the situation and circumstances has faded away.

*Drummond v. Foster,* 107 Me. 401, 404, 78 A. 470 (1910) (citation omitted). *See also* Restatement (First) of Property § 483 (1944) ("In ascertaining the extent of an easement created by conveyance, the following are important factors ...(d) the use made of the servient tenement after the conveyance."); 28A *C.J.S.* Easements § 146 (1996) ("Subsequent use of the easement may also be relevant [to determining its scope], at least if ambiguity exists."). The character of the land in the years shortly after the conveyance informed the court of the likely use of the property at the time of the conveyance. Because there is competent evidence in the record to support the court's finding that the parties did not contemplate that Hinman's parcel would be used for residential purposes, its finding is not clearly erroneous.

The entry is:

Judgment affirmed.