STATE OF MAINE           SEVENTH DISTRICT COURT
KENNEBEC, SS             NORTHERN KENNEBEC
                              CV-10-10
                              MMM-KEN - 3/31/2011

DENNIS BUTLER and
TERRY BUTLER,

      Plaintiffs

v.                                FINDINGS AND JUDGMENT

DANNY STROUT and
CANDY JO STROUT

      Defendants

## Background

The parties own adjoining properties on Railroad Street in Clinton, Maine.

Plaintiffs Dennis and Terry Butler own a business, Clinton Auto Parts, which they

acquired in 1995. The Defendants reside next door, and acquired the property in 1984.

The 1995 deed to the Butlers also conveyed to them a right of way which runs between

the properties and continues around the back of their business. While the parties do not

dispute the location of the boundary between their properties, they do dispute how the

right-of-way can be used by the Plaintiffs. In 2009, the escalation of this dispute resulted

in the construction by the Strouts of a stockade fence situated just .99 feet off a portion

of the boundary line, directly in front of a freight door used by the business. In addition, a

dispute has now emerged as a result of a survey conducted in May of 2009 regarding a

1

bulkhead that the Plaintiffs repaired and covered with a roof after acquiring the property in 1995. The survey indicates that the bulkhead extends approximately eight inches onto the Defendants' property, with the roof extending even further across the line.

Plaintiffs filed a three-count complaint in the Waterville District Court on January 8, 2010. Count I requests declaratory and injunctive relief. Count II requests a finding of nuisance and requests compensatory damages. Count III requests a finding of malice and an award of punitive damages. [1]

Defendants timely filed an answer with affirmative defenses and also brought a number of counterclaims. Counterclaim I requests declaratory relief. Counterclaim II alleges statutory trespass, and Counterclaim III alleges common law trespass.

The case was transferred to the Superior Court for trial on September 13, 2010, and trial was conducted on January 20, 2011. Prior to taking testimony, the Court conducted a view of the right of way in question, and entered the premises of the Plaintiffs in order to access the basement to view the bulkhead in question. The Court conducted a second view of the property on March 29, 2011 by agreement of the parties. The parties submitted written arguments, the last of which were received by the Court on February 9, 2011.

Both parties ask the Court to determine the scope of the right of way, and the Plaintiffs ask the Court to determine its width to be 12 feet, with the Defendants asking that it be determined to be 10 feet. Plaintiffs claim that they are entitled to use it for loading and unloading of inventory and other materials, while Defendants claim that their

---

[1] Accompanying the complaint was a motion for preliminary injunction which was denied by Judge Charles Dow on January 29, 2010. Judge Dow found that notice was required to be given to the defendants and also that the harm was not irreparable. The Plaintiffs, who had in fact served the motion upon defendants, filed a motion for reconsideration. The motion was set for hearing on April 21, 2010 and denied again by Judge Dow on May 11, 2010.

only right is to pass along it to the back of the Plaintiffs' property. Defendants further request that the Court order the Plaintiffs to remove the portion of the bulkhead that encroaches onto their property, including the roof overhang. The Plaintiffs claim that the width of the northern bulkhead wall was not increased by anything that Dennis Butler did to it in 1995, and that the encroachment occurred more than 20 years ago. The Plaintiffs further claim that the doctrine of laches prevents the Defendants from now arguing that the bulkhead should be removed.

The Plaintiffs acquired their property at 30 Railroad Street in Clinton, Maine on October 4, 1995. It was conveyed to them as joint tenants by Lee and Wanda Butler, Dennis Butler's parents. (Def. Exh. 9). Lee Butler acquired this property from Sandra Alice Woods in 1986. (Def. Exh. 8). Lee Butler ran an auto parts business on the premises. Dennis Butler worked at the business throughout the years his father owned it, and continues to own and operate the business at the present time. Defendant Candy Jo Strout grew up in the house next door and now resides there with her husband, Danny. She and her husband acquired the house in 1984 from her parents, Philip and Verna Starbird. (Def. Exh 7).

The deed to the Plaintiffs (Def. Exh. 9) conveys to them a right-of-way which is described as follows:

> Also conveying a certain right of way running on the north side of said store lot on land of said Files to the distance of twelve (12) feet west of the platform of the well situated on said store lot. Meaning the same right of way reserved from Sargent Jewell by heirs of Randolph Goodwin, the twelfth day of June AD 1869 reserving the right for Charles Wentworth, his heirs and assigns to use the well on said store lot with the right of way to and from the same forever. [2]

---

[2] This description is identical to the description of the right-of-way contained in the 1986 deed from Sandra Alice Woods to Lee Butler. (Def. Exh. 8)

The description of this right of way in the 1869 deed, in pertinent part, is as follows:

> ...nevertheless a right of way on the north side of the store lot, to pass on to rear of the store lot the west end to be limited to twelve feet west of the platform of the said well.

The right-of-way was first created in an October 20, 1866 conveyance from Randolph Goodwin to Henry Goodwin. (Def. Exh. 2) Randolph Goodwin owned both the Butler and Strout parcels at that time, but in the 1866 conveyance to his relative Henry Goodwin, he split the parcel by conveying the property owned now by the Butlers (the store lot), but keeping the property now owned by the Strouts (the northern lot). The right- of-way is described in the 1866 conveyance as follows:

> Also intending to convey unto him the said Henry C. Goodwin by these presents a right of way on the north line of the above described lot to the back end of the said lot. (Def. Exh. 2)

That same day Henry Goodwin conveyed half of his interest in the store lot to Granville Goodwin. (Def. Exh. 3).

On June 28, 1869, Henry Goodwin and Granville Goodwin conveyed this jointly owned property to J.M. Winn. (Def. Exh. 4).

Sixteen days earlier, on June 12, 1869, the heirs of Randolph Goodwin conveyed to Sargent Jewell the northern lot, subject to the right-of-way at issue in this case. (Def. Exh. 5).

The parties agree that the Butlers' claim to the right-of-way is through the conveyance to J. M. Winn, and that the Strouts' ownership rights to their property are traceable back to and limited by the conveyance to Sargent Jewell. Both ask the Court to consider the description of the right of way contained in the June 12, 1869 conveyance

4

from the heirs of Randolph Goodwin to Sargent Jewell as controlling Plaintiffs' use of this right of way. (Def. Exh. 5)[3]

At trial, Plaintiff's counsel indicated that this case was brought because of a fence that the Defendants erected on the boundary between the parties' property which Plaintiffs claim has obstructed their access to a freight door located toward the rear of their property. Defense counsel indicated that the dispute arose over parking, and indicated that the fence was erected so Defendants could put up "no parking" signs to prevent customers and vendors coming to the Plaintiffs' store from parking on or near the driveway. They claim that this parking made it difficult for them to access their property. Defendants insist that the right of way or easement entitles the Plaintiffs to pass on to the rear of the store lot, but that it does not allow the Plaintiffs or their vendors to use the driveway for loading or unloading of inventory or other materials. The Plaintiffs agree that no one should be allowed to park on the right of way, including customers, but that they should be allowed to have delivery drivers park temporarily on it to access the freight door.

According to Plantiff Dennis Butler, the problems between the parties began around 2009. He stated that he was having trouble getting around the building to do snow removal during the winters of 2008 and 2009 because the Defendants' daughter began parking her car in the right of way. He stated that he would go and ask them to move the car, which they did at first. However, eventually this arrangement deteriorated, with the Strouts claiming that on multiple occasions they could not get to and from their property from the driveway because of customer parking and vendor deliveries, and with the

_____

[3] The parties agree that the easement as originally created ran was approximately 165 feet long, but that when it passed out of control of the Goodwin family it was decreased in length from 165 feet to end 12 feet west from the platform of the well. (Testimony of Robert Knowlton).

Butlers complaining that deliveries of inventory and taking away of materials were made more difficult due to Strout vehicles parked on the right of way.

Letters were exchanged between the attorneys beginning in April of 2009. The Defendants hired Robert Knowlton to conduct a survey, which was completed in May of 2009. (Def. Exh. 1). The survey indicates that a bulkhead attached to the store encroaches on the Strouts' property by approximately 8 inches at one point. He also spray-painted the boundary line. In addition, the survey indicates that the roofline of the bulkhead encroaches even further. (Def. Exh. 17a). He testified that he did not advise them to build a fence on the line, but simply located the boundary line for them. In October of 2009 the Strouts erected the stockade fence which is depicted in a number of photographs admitted into evidence, including Plaintiff's Exhibit 6 and Def. Exhibits 17m and 17oo.

Mr. Knowlton also testified that in the course of conducting the survey he reviewed deeds in the chains of title of the parties. He stated that the deeds do not give a width to the right-of-way but that in his experience, deeds from the time period when the easement was created (1869) were typically 10 feet wide.

According to Dennis Butler, he first started working at the store as a child helping his father Lee Butler in the 1980's. He stated that his father acquired the store in 1986 and that the side freight door was used on a daily basis receive deliveries. He testified that several different suppliers or vendors brought products to the store, and that his father never experienced any difficulties from the neighbors about his use of the side entrance. He further indicated that when he took over the property in October 1995 the practice did not change, although he did switch from using various suppliers of auto parts to NAPA exclusively. Typically, those deliveries now occur five nights a week, Monday

through Friday. In addition, he stated that Irving trucks come to deliver propane, Standard Distributors delivers oil, and battery cores get picked up and hauled away. He stated that deliveries now involve twice as much work than they did before the fence was erected. Delivery trucks now park on the street, and items are taken to the rear of the building and around the fence by hand or with an electric pallet. He stated that he understands and agrees that his tenants and customers are not allowed to use the right of way or to park on the right-of-way.

Mr. Butler further testified that the bulkhead in question was attached to and part of the property when he acquired it in 1995. The month before acquiring the property from his father, he did some repairs, including filling in the old well on the northwest corner of the property that had partially caved in and improving the bulkhead. He testified that before improving the bulkhead it was covered only with a piece of plywood. In addition, a truck had backed onto it and damaged it, so he built cement walls up from the existing bulkhead. He claims that the improvements did not change its width.

Plaintiffs do not contest the survey conclusions of Robert Knowlton both as to the 8 inch encroachment by the bulkhead onto the Defendants property as well as the fact that the roof line of the bulkhead extends even further over the property line. (Def. Exh. 17a).

Philip Starbird, Candi Jo Strout's father, testified that he owned the house where his daughter and son-in-law now reside from 1959 to 1984. He testified that the auto parts store used to be run as a general store, and that it was vacant for a period of time in between uses. He stated that the Withams, who ran the general store, used to burn coal and used the right-of-way for delivery of that coal with his permission. He stated that

other deliveries to the store were made to the front of the store. He also stated that the door on the side of the building was an entrance to an area where wood was stored.

Katie Strout, the Defendants' daughter, testified about recent problems she had getting to and from her parents' home. She stated that in May or June of 2009, she was running late for work one morning and a semi-truck was parked in the driveway which prevented her from getting onto Railroad Street. She testified that she complained to Dennis Butler who informed her that the driver needed 15 minutes to complete unloading the truck. A police officer was called at some point during the dispute. She testified that in order to get onto Railroad Street she had to drive along the sidewalk in front of her house.

Defendant Danny Strout testified that when he purchased the house (with his wife Candi Jo) in 1984 he believed no one was using the store. He stated that the auto parts store opened in 1986. He worked at the store from late 1986 to May of 1990 and stated that the side door was used for oil deliveries. He stated that he gave Lee Butler permission to use the driveway for the NAPA truck to make deliveries.

Candi Jo Strout testified that she has lived in the house for 51 years. Def. Exh. 17 consists of four Strout family pictures, one of which (upper right) depicts Mrs. Strout in 1981 standing on the right-of-way. It also shows the bulkhead on the Butler property.

Def. Exh. 17b depicts a crack line which Defendants claim indicate that the bulkhead repair done by Dennis Butler in fact created the encroachment. Candi Jo Strout further testified that the conflict did begin with the incident involving Katie's car, and that they erected the fence in order to have a way to put up "no parking" signs. She

testified that the bulkhead roof dumps snow onto their driveway, although Dennis Butler testified that he removes snow on the right of way, now using a tractor instead of a plow.

## FINDINGS

The Court has considered the evidence, including views of the property conducted on the day of trial and by agreement of the parties, on March 29, 2001. The Court has also considered the arguments of the attorneys set forth in their written arguments, and issues the follow findings.

*Scope of the Easement*

As noted above, the easement in question was first created in an October 20, 1866 conveyance from Randolph Goodwin to Henry Goodwin. (Def. Exh. 2). Def. Exh. 13 depicts the size and shape of the lot conveyed as well as the easement. On that same day, Henry Goodwin conveyed an "undivided half" of this property to Granville Goodwin. Def. Exh. 3 states clearly that the conveyance from Henry Goodwin to Granville Goodwin includes "one undivided half of the Store and other improvements thereon." It is clear to the Court based on these deeds that this property (now owned by the Butlers) was, as of the time the easement was created, used for commercial purposes. In addition, as the parties noted, it is referred to consistently in other deeds introduced as "the store lot."

The Law Court has recently reiterated the principle governing the determination of the scope of an express easement as follows:

> When the purposes of an express easement are not
> specifically stated, a court must ascertain the objectively

> manifested intention of the parties (to the original conveyance) in light of circumstances in existence recently prior to the execution of the conveyance.

*Robert Flaherty et al v. Helen Muther*, 2011 ME 32, ¶ 55, citing *Fine Line v. Blake*, 677 A.2d 1061, 1064 (Me. 1966). The court must also consider the use of the easement during the years "shortly after the original grant." *Guild v. Hinman*, 1997 ME 120.

The Law Court also addressed in *Flaherty* the principles used in analyzing issues of scope when the use of the easement has changed or varied over time:

> The scope of a deeded right of way is not necessarily unlimited but uses may vary to allow full enjoyment of the easement, as long as changes in use are consistent with the easement's purpose and the "practical construction which the parties placed upon the deed by their conduct, by acts done by one party and acquiesced in by the other, especially when such conduct is proven to have continued for a long time."

*Flaherty*, ¶55 citing *Guild*, 1997 ME 120 ¶¶ 6,9.

The parties disagree as to how long the Plaintiffs and their suppliers/vendors are permitted to stay in place on the road to load and unload vehicles bringing inventory and supplies to the business. [4] The easement obviously does not address this specifically. The most the Court can reasonably infer from circumstances in existence recently prior to or shortly after the execution of the conveyance anything about the intent of the parties is that both parties understood that the dominant estate was commercial property.

---

[4] The Court would note that there are several references to a well, as well as to the use of a well, in the deeds admitted into evidence. The deed from Henry and Granville Goodwin to J.M. Winn (Def. Exh. 4) includes a reservation for Sargent Jewell and his heirs to use the well "forever." Sargent Jewell owned the property now owned by the Strouts. The deed also places the terminus of the right of way in question at 12 feet west of the well platform. However, this terminus seems unconnected to anyone's use of the well, and neither party suggests that it is. It seems instead to be a reference point in the boundary description and a limitation on the length of the easement. In other words, the Court cannot conclude that the scope of the easement is limited to use of the well by either party. At trial, counsel for the Strouts indicated that they were not pursuing any claim that the Butlers had blocked their access to the well.

10

The Defendants also argue that prior owners did not use the easement the way that the Plaintiffs currently use it. Defense witnesses testified that the grocery store took deliveries in the front, although they also indicated that coal and wood may have been delivered from the easement through a side door. Defendants also argue that Dennis Butler's father, Lee Butler, would ask their permission to accept deliveries, and that the Plaintiffs' current use is unreasonable and far beyond the scope conveyed, which in their view is simply to pass to the back of the property, without stopping.

The Court finds that this easement was, as stated above, intended to benefit what is now the Butler property, and it was conveyed to the Butlers' predecessors with knowledge that the property was being used for commercial purposes. The facts that the store now is selling something different from what other stores located there may have sold, or that prior owners of the store used the easement differently than the current owners, do not, in and of themselves, support the Defendants' position that the current use is outside the scope of the conveyance. The Court finds that the Plaintiffs' use of the easement is not inconsistent with its purpose and that it is not inconsistent with the practical construction placed upon it by the parties' conduct for a long period of time. Even if prior store owners or operators took deliveries of inventory through the front door, they also took in coal and wood through the side door to benefit the store. There would be no way for that to have been accomplished if coal and wood sellers were not parked for reasonable periods of time in the right of way. In addition, the Court finds Dennis Butler's testimony to be credible as to the use of the easement by his father, who owned and operated the auto parts store since 1986. He testified that inventory was delivered through the freight door which he said was used "on a daily basis" in this way.

11

The Court therefore concludes that the Plaintiffs' express right to "pass on to rear of store lot" includes the right to park, or have their vendors park, on the right of way for reasonable periods of time to load and unload inventory and other materials through the freight door or any other door that might be on the side of the building.

*Width of the Easement*

It is well settled that if a grant of an easement, or available records referencing it, do not provide specific information regarding the width of an easement, a Court may fix the width according to its intended use, i.e., a width adequate for its intended purpose. The Law Court stated in *Cleaves v. Braman* that "if a width of a way is not fixed by the deed nor determined by the parties, it will be held to be a way of convenient width for all the ordinary uses of free passage." 103 Me. 154 (1907).

In this case the only evidence offered by either party as to this issue, other than deeds that refer to this easement, was the testimony of Robert Knowlton. He stated that in his experience deeds from the time period in question usually conveyed rights-of-way 10 feet in width. In addition, the Defendants point out that the terminus of the easement at the northwest corner of the property is set at 12 feet from the well platform. They argue that this effectively creates a maximum width of 10 feet for the easement. The Court declines to fix the width at 10 feet. The Court must look at the intended purpose of the easement, which is clearly to benefit the Butler's property which is and has been commercial property since the easement was created. The Court has found that the easement includes the right for the Plaintiffs and their suppliers or vendors to park along

the easement for reasonable periods of time to unload and unload inventory and other material. Therefore, the Court finds that 12 feet is a width convenient for all the ordinary, commercial uses of free passage on the easement.

In fixing the width at 12 feet, the Court additionally notes that the Plaintiffs have not to date abused or otherwise used the easement for anything other than reasonable, commercial purposes. They agree that their customers cannot park on the easement. They agree that their tenants cannot use the easement (although that may have on a few occasions in the past). They seek only to be able to have the ability to park on it, or to have vendors or suppliers park on it, for brief periods of time to unload and load inventory and other material. The Court agrees that these vehicles require a wider area in which to safely park and pass in order to effectuate these limited purposes.

*The Stockade Fence*

The Court finds that the stockade fence erected by the Defendants was not erected simply to affix "no parking" signs, but was erected to prevent the Plaintiffs from using the right-of-way in a manner which has now been found by the Court to be within its grant. In addition, it is well settled that 'the owner of an estate that is servient to an easement may not make use of the servient land which impairs effective use of the easement *within the bounds of the easement."* *Badger v. Hill,* 404 A.2d 222, 227 (Me. 1979), (emphasis added). The fence in question, while located on the Strouts' property (the servient estate), was also constructed within the bounds of the Butlers' easement. The Court finds that the Strouts' use of their property (the servient estate) in this fashion

13

impairs the effective use of the Butlers' easement, and that it does so within the bounds of that easement.

The Court therefore orders that the Strouts shall, within 45 days from the date this order is entered on the docket, remove the stockade fence in question.

*The Bulkhead*

The parties agree that the bulkhead encroaches onto the Strouts' property by eight inches. It seems apparent to the Court that no one knew about this encroachment until Mr. Knowlton's survey results were made known, although it is also clear from the record that the Strouts knew about the repair or improvements being made to the original bulkhead structure at the time those repairs were being made in September or October of 1995.

The second view of the bulkhead[5] conducted on March 29 allowed the Court to make entry to it from an outside door (see Plaintiffs' Exh. 6) and to visualize from below the ground level the improvements that the parties agree were performed by Dennis Butler just before he purchased the property in 1995. It is clear to the Court after this view that the northern wall of the bulkhead has in fact extended over the Strouts' property line before Dennis Butler built up the wall. The Court could clearly see older

---

[5] Present at the view on this date were counsel for the parties, Dennis Butler, court security and the undersigned Justice. No court reporter was available. The Court informed the parties that they would have the opportunity to submit further argument given the fact that they had agreed to this view after the record at closed, at the Court's request. In addition, the Court had informed that parties that while this matter was under advisement, the Law Court issued its decision in *Flaherty v. Muther*, 2011 ME 32. Both parties indicated at the view that they had an opportunity to read this decision, but would rely upon the filings they had made previously.

14

cement under newer cement on both the northern and western wall of the bulkhead. The Court could also see that the crack in the upper photo in Def. Exh 17b is really a partial representation of the improvements. From inside the bulkhead the Court could see that the crack in Exh. 17b ( which depicts the crack on the outside western bulkhead wall) continues down below ground level, until it intersects the northern bulkhead wall. Cracks could be seen on the northern bulkhead wall as well, also below the ground level. Older-looking cement was below the cracks on both the western and northern walls, with newer cement above these cracks. In addition, the Court could see that the width of the original northern wall is not greater than the width of the new wall that was built upon that wall. The Court finds that the improvements made by Dennis Butler in 1995 did not in fact create the encroachment. The Court further finds that this encroachment of the bulkhead onto the Strouts' property has been in existence for more than 20 years, from at least as early as 1986 when Lee Butler owned the property.

The Plaintiffs have therefore established the first element of adverse possession.[5] However, in addition to proving a duration exceeding the 20 year statute of limitations period, the Plaintiffs must prove by a preponderance of evidence that possession and use of the property claimed was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; and (8) exclusive. *Weeks v. Krysa*, 2008 ME 120.

In addition, these elements must be established by clear proof of acts and conduct sufficient to put a person of ordinary prudence, and particularly the true owner, on notice

---

[5] The Plaintiffs' brief uses the terminology "easement by prescription." The Court agrees with the Defendants that the proper analysis would be under the doctrine of adverse possession given the fact that the bulhead cannot fairly be described as an simply an "encumbrance on the fee simple title" of the Strouts such as the right-of-way. See, Hermansen and Anderson, *Roads and Easements, MSBA Practice Series 101, 2003, § 3.3*. In addition, the Court would note that the Plantiffs did not bring a separate count claiming adverse possession or easement by prescription . However, the Court finds that both parties have asked the Court to resolve the conflict about the bulkhead which arose in the wake of the survey. See also Rule 15(b) M.R.C.P..

that the land in question is "actually, visibly, and exclusively" held by the claimant "in antagonistic purpose." *Falvo v. Pejepscot Indus. Park, Inc.*, 1997 ME 66.

In *Dombrowski v. Ferland* 2006 ME 24, 893 A.2d 599 the Law Court declared that in Maine there are not two types of adverse possession claims, based either on statute or on the common law. The Court held that "although we recognize that statements in our opinions may have allowed the inference that there are two separate claims for adverse possession...there is only one claim – the common law claim as amended by the Legislature." 893 A.2d at 604. The Court further quoted the statement of intent in the 1993 amendment to 14 MRSA §810-A:

> This bill adopts the position now held by a majority of jurisdictions, that if the occupancy of land beyond a true boundary line is *actual, open, notorious* and *continuous,* it is *hostile* and *adverse* even though the original occupancy took place due to ignorance, inadvertence or mistake, without the intention to claim the lands of another. *Id.* at 605 (emphasis added).

With respect to elements 1-4, 7 and 8 above, there is no question that the Butlers' possession and use of a very small portion of the Strouts' land was actual, open, visible, notorious, continuous and exclusive. It is clear from photos admitted by the defense and testimony of the Defendants that they have been well aware of the existence of the bulkhead for decades. They were also aware of the Butlers' use of it, as well as the improvements made upon it. With respect to the elements that the possession and use must be hostile and adverse, there is no question that while the Butlers took occupancy of the Strout's land beyond a true boundary line without the intention to claim it, they did so due to a mistaken belief that the bulkhead and its improvements were located on their own property, and not on the Strouts' property. Under Maine law, because the occupancy

16

beyond their boundary line was actual, open, notorious and continuous, it is also hostile and adverse.

The Court therefore concludes that the Plaintiffs have established by a preponderance of evidence all elements of adverse possession entitling them to ownership of the bulkhead.

Notwithstanding the above findings and conclusions, it is clear that the roofline covering the bulkhead extends over the Butler property even further than the northern bulkhead wall and that this extension has been in place, according to unrebutted testimony, only since the fall of 1995 – in other words, for less than the requisite twenty years. Because the Plaintiffs cannot make out a claim of adverse possession for this extension of the roofline, the Defendants are entitled to an order, as they have requested, for its removal or modification. The Court further agrees with the Defendants that the Plaintiffs cannot achieve through application of doctrine of laches what they could not achieve through their claim of adverse possession, particularly given the failure of the Plaintiffs to establish any prejudice. It will be just as difficult to modify the roof today as it would have been to do the day it was constructed.

The Plaintiffs have 45 days from the date this order is docketed to modify the roofline of the bulkhead roof so that it does not encroach upon the Strouts' property.

The entry will be:

1) Judgment is entered for Plaintiffs on Counts I and II of their Complaint. Defendants shall within 45 days from the date the Judgment is entered on the docket remove the stockade fence erected in October of 2009. The Court declares that scope of the easement conveyed to the Plaintiffs by deed dated October 14, 1995 as described in the Warranty Deed from Lee and Wanda Butler

to Dennis and Terry Butler recorded in the Kennebec County Registry of Deeds in Book 4999, Page 300, includes the right to use the easement or right-of-way to accept and make deliveries of inventory, fuel and other items from this right-of-way as reasonably necessary to benefit the Plaintiffs' Store Lot. The Court further declares the right-of-way to be 12 feet wide. The scope of the right-of-way includes the right to pass on to the rear of the Store Lot, but does not include the right for customers, tenants or owners or operators of the Store lot to park on said right-of-way. The Court declares that the Plaintiffs are owners in fee simple of the bulkhead located on the northern side of the store lot, through the doctrine of adverse possession.

2) The Court finds no basis for an award of punitive damages as requested in Count III of Plaintiffs' Complaint, and enters Judgment for Defendants on this Count.

3) On Count I of Defendants' Counterclaim, Judgment is entered for Plaintiffs consistent with paragraph one of this entry.

4) On Count II and III of Defendants' Counterclaim, Judgment is entered for Defendants as respects the overhang of the roof of the bulkhead only. Plaintiffs are ordered to modify the roofline of the bulkhead within 45 days of the date of entry of Judgment so that it does not extend over the boundary line as declared in this Judgment above in paragraph one of this entry.

5) The Court will retain jurisdiction over this matter should either or both parties conclude that additional documents or conveyances should be filed in the Kennebec County Registry of Deeds to effectuate this Judgment and they are unable to agree to upon the necessity of or wording of such documents or conveyances.

6). Each party shall bear their own costs.

_3 / 3 1 / 1 1_
**DATE**

_____
**SUPERIOR COURT JUSTICE**

18

DENNIS BUTLER  - PLAINTIFF

Attorney for: DENNIS BUTLER
ROBERT M MARDEN  - RETAINED 01/08/2010
MARDEN DUBORD ET AL
44 ELM STREET
PO BOX 708
WATERVILLE ME 04901-0708


TERRY BUTLER  - PLAINTIFF

Attorney for: TERRY BUTLER
ROBERT M MARDEN  - RETAINED 01/08/2010
MARDEN DUBORD ET AL
44 ELM STREET
PO BOX 708
WATERVILLE ME 04901-0708


VS
DANNY STROUT  - DEFENDANT
19 RAILROAD ST
CLINTON ME 04927
Attorney for: DANNY STROUT
DANIEL BERNIER  - RETAINED
LAW OFFICE OF DANIEL J BERNIER LLC
179 MAIN STREET STE 304
WATERVILLE ME 04901

CANDY JO STROUT  - DEFENDANT
19 RAILROAD ST
CLINTON ME 04927
Attorney for: CANDY JO STROUT
DANIEL BERNIER  - RETAINED
LAW OFFICE OF DANIEL J BERNIER LLC
179 MAIN STREET STE 304
WATERVILLE ME 04901

Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 01/08/2010

# Docket Events:
01/08/2010 FILING DOCUMENT - COMPLAINT FILED ON 01/08/2010

01/20/2010 Party(s):  DENNIS BUTLER
           ATTORNEY - RETAINED ENTERED ON 01/08/2010
           Plaintiff's Attorney: ROBERT M MARDEN

02/01/2010 Party(s):  DENNIS BUTLER
           MOTION - MOTION PRELIMINARY INJUNCTION FILED ON 01/08/2010
           WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

02/01/2010 Party(s):  DENNIS BUTLER
           MOTION - MOTION PRELIMINARY INJUNCTION DENIED ON 01/29/2010
           CHARLES  DOW , JUDGE

COPIES TO PARTIES/COUNSEL

MOTION DENIED.  NOTICE TO
ADVERSE PARTY REQ'D. HARM NOT IRREPARABLE.

02/08/2010 Party(s):  CANDY JO STROUT
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 01/14/2010
           Plaintiff's Attorney:  ROBERT M MARDEN

02/08/2010 Party(s):  CANDY JO STROUT
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 01/29/2010

02/08/2010 Party(s):  DANNY STROUT
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 01/29/2010

02/08/2010 Party(s):  DANNY STROUT
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 01/14/2010
           Defendant's Attorney: ROBERT M MARDEN

02/08/2010 Party(s):  DANNY STROUT
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 01/29/2010

02/08/2010 Party(s):  DANNY STROUT
           ATTORNEY - RETAINED ENTERED ON 01/29/2010

02/08/2010 Party(s):  CANDY JO STROUT
           ATTORNEY - RETAINED ENTERED ON 01/29/2010

02/08/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           RESPONSIVE PLEADING - ANSWER & COUNTERCLAIM FILED ON 02/04/2010
           Plaintiff's Attorney:  DANIEL BERNIER

02/08/2010 Party(s):  DANNY STROUT
           ATTORNEY - RETAINED ENTERED ON 02/04/2010
           Defendant's Attorney: DANIEL BERNIER

02/08/2010 Party(s):  CANDY JO STROUT
           ATTORNEY - RETAINED ENTERED ON 02/04/2010
           Defendant's Attorney: DANIEL BERNIER

02/08/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           RESPONSIVE PLEADING - RESPONSE FILED ON 02/04/2010
           Defendant's Attorney: DANIEL BERNIER
           OBJECTION TO MOTIN FOR PRELIMINARY INJUNCTION FILED.

02/08/2010 Party(s):  DENNIS BUTLER
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 02/04/2010
           SUMMONS FOR DENNIS AND TERRY BUTLER FILED.

02/08/2010 ORDER - SCHEDULING ORDER ENTERED ON 02/08/2010
           CHARLES  DOW , JUDGE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL

02/08/2010 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 04/04/2010

03/10/2010 Party(s): DENNIS BUTLER
MOTION - MOTION TO RECONSIDER FINDING FILED ON 02/16/2010
Plaintiff's Attorney: ROBERT M MARDEN
WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

03/10/2010 Party(s): DENNIS BUTLER
RESPONSIVE PLEADING - REPLY/ANSWER TO COUNTERCLAIM FILED ON 02/18/2010
Plaintiff's Attorney: ROBERT M MARDEN

03/10/2010 Party(s): DANNY STROUT,CANDY JO STROUT
RESPONSIVE PLEADING - RESPONSE FILED ON 02/22/2010
Defendant's Attorney: DANIEL BERNIER
OBJECTIN TO MOTION FOR RECONSIDERATION FILED.

03/11/2010 Party(s): DENNIS BUTLER
MOTION - MOTION TO RECONSIDER FINDING GRANTED ON 03/10/2010
CHARLES DOW , JUDGE
COPIES TO PARTIES/COUNSEL
                                                      SET MOTION FOR PRELIMINARY
OBJECTION FOR HEARING.

03/11/2010 HEARING - MOTION PRELIMINARY INJUNCTION SCHEDULED FOR 04/29/2010 @ 1:00  in Room No.  1

03/11/2010 HEARING - MOTION PRELIMINARY INJUNCTION NOTICE SENT ON 03/11/2010

05/12/2010 HEARING - MOTION PRELIMINARY INJUNCTION HELD ON 04/29/2010

05/12/2010 ORDER - PRELIMINARY INJUNCTION ENTERED ON 05/11/2010
CHARLES DOW , JUDGE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL                                       ORDER DENYING PRELIMINARY
INJUNCTION

05/12/2010 HEARING - PRETRIAL/STATUS SCHEDULED FOR 06/10/2010 @ 1:00  in Room No.  2
NOTICE TO PARTIES/COUNSEL

05/12/2010 HEARING - PRETRIAL/STATUS NOTICE SENT ON 05/12/2010

05/21/2010 Party(s): DENNIS BUTLER
OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 05/19/2010
Plaintiff's Attorney: ROBERT M MARDEN

05/21/2010 Party(s): DENNIS BUTLER
MOTION - MOTION TO CONTINUE FILED ON 05/19/2010
Plaintiff's Attorney: ROBERT M MARDEN
MOTION TO RESCHEDULE PRE-TRIAL HEARING.

05/21/2010 Party(s): DENNIS BUTLER
MOTION - MOTION TO CONTINUE GRANTED ON 05/21/2010
CHARLES DOW , JUDGE
COPIES TO PARTIES/COUNSEL

06/01/2010 HEARING - PRETRIAL/STATUS CONTINUED ON 05/20/2010

06/01/2010 HEARING - PRETRIAL/STATUS SCHEDULED FOR 07/26/2010 @ 8:30  in Room No.  1
           NOTICE TO PARTIES/COUNSEL

06/01/2010 HEARING - PRETRIAL/STATUS NOTICE SENT ON 06/01/2010

06/02/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 05/27/2010
           Defendant's Attorney: DANIEL BERNIER

06/04/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 06/03/2010
           DEF'S AMENDED WITNESS & EXHIBIT LIST FILED.

07/26/2010 HEARING - PRETRIAL/STATUS HELD ON 07/26/2010
           CHARLES  DOW , JUDGE

07/26/2010 ORDER - PRETRIAL/STATUS ENTERED ON 07/26/2010
           CHARLES  DOW , JUDGE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL

07/26/2010 CASE STATUS - REFERRED TRAILING DOCKET ON 07/26/2010
           SEPT 2010

08/11/2010 HEARING - PRETRIAL/STATUS SCHEDULED FOR 08/27/2010 @ 12:15  in Room No.  7
           NOTICE TO PARTIES/COUNSEL

08/11/2010 HEARING - PRETRIAL/STATUS NOTICE SENT ON 08/11/2010

08/23/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           LETTER - REQUEST FOR PROTECTION FILED ON 08/19/2010

08/30/2010 HEARING - PRETRIAL/STATUS HELD ON 08/27/2010

08/30/2010 HEARING - SETTLEMENT CONFERENCE SCHEDULED FOR 09/13/2010 @ 1:00  in Room No.  7
           NOTICE TO PARTIES/COUNSEL

08/30/2010 HEARING - SETTLEMENT CONFERENCE NOTICE SENT ON 08/30/2010

09/15/2010 HEARING - SETTLEMENT CONFERENCE HELD ON 09/13/2010

09/15/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
           OTHER FILING - OTHER DOCUMENT FILED ON 09/10/2010
           Defendant's Attorney: DANIEL BERNIER
           DEF'S SUBMISSION FOR JUDICIAL SETTLEMENT CONFERENCE FILED.

09/15/2010 Party(s):  DENNIS BUTLER
           OTHER FILING - OTHER DOCUMENT FILED ON 09/10/2010
           Plaintiff's Attorney:  ROBERT A MARDEN
           PLT'S SUBMISSION FOR JUDICIAL SETTLEMENT CONFERENCE FILED.

09/15/2010 ORDER - ORDER OF ASSIGNMENT ENTERED ON 09/13/2010
         CHARLES  DOW , JUDGE
         ASSIGNED TO KENN SC

09/21/2010 Party(s):  TERRY BUTLER
         ATTORNEY - RETAINED ENTERED ON 01/08/2010
         Plaintiff's Attorney: ROBERT M MARDEN

09/21/2010 CASE STATUS - CASE FILE LOCATION ON 09/20/2010
         AUGSC

11/12/2010 TRIAL - TRAILING LIST SCHEDULE OTHER COURT ON 11/12/2010
         AUGSC                                                    TRIAL LIST JAN
         3 TO FEB 4, 2011

12/08/2010 TRIAL - BENCH SCHEDULE OTHER COURT ON 01/06/2011 @ 9:00  in Room No.  4
         M MICHAELA MURPHY , JUSTICE
         AUGSC

12/08/2010 TRIAL - BENCH NOTICE SENT ON 12/08/2010

12/15/2010 Party(s):  DANNY STROUT,CANDY JO STROUT
         MOTION - MOTION FOR VIEW FILED ON 12/14/2010
         Defendant's Attorney: DANIEL BERNIER
         REQUEST FOR VIEWING

12/23/2010 TRIAL - BENCH SCHEDULE OTHER COURT ON 01/20/2011 @ 10:00  in Room No.  4
         AUGSC

12/23/2010 TRIAL - BENCH NOTICE SENT ON 12/22/2010

12/30/2010 HEARING - OTHER HEARING SCHEDULE OTHER COURT ON 12/30/2010 @ 9:30
         AUGSC                                                    PHONE
         CONFERENCE.  ATTY MARDEN TO INITIATE.

01/04/2011 TRIAL - BENCH NOT HELD ON 01/04/2011
         RESCHEDULED TO 1/20/11

01/05/2011 HEARING - OTHER HEARING HELD ON 12/30/2010
         M MICHAELA MURPHY , JUSTICE
         Defendant's Attorney: DANIEL BERNIER
         Plaintiff's Attorney:  ROBERT M MARDEN
         PHONE CONFERENCE

01/05/2011 Party(s):  DANNY STROUT,CANDY JO STROUT
         MOTION - MOTION FOR VIEW GRANTED ON 01/02/2011
         M MICHAELA MURPHY , JUSTICE
         THE COURT CONFERRED WITH PARTIES BY PHONE ON 12/30/10.  REQUEST FOR VIEW IS GRANTED BY
         AGREEMENT.  COURT TO MEET PARTIES AT 8:30 AM ON 1/20/11 TO VIEW RIGHT-OF-WAY.  ATTORNEY
         BERNIER WILL SEND DIRECTIONS TO COURT.          COPY TO ATTYS MARDEN AND BERNIER

01/05/2011 Party(s):  DANNY STROUT,CANDY JO STROUT

OTHER FILING - OTHER DOCUMENT FILED ON 01/05/2011
Defendant's Attorney: DANIEL BERNIER
DRIVING DIRECTIONS TO 34 RAILROAD STREET IN CLINTON

01/20/2011 Party(s): DANNY STROUT,CANDY JO STROUT
OTHER FILING - REPLY MEMORANDUM FILED ON 01/20/2011
Defendant's Attorney: DANIEL BERNIER
RESPONSE TO PLTF'S TRIAL MEMORANDUM

01/21/2011 Party(s): DANNY STROUT,CANDY JO STROUT
OTHER FILING - TRIAL BRIEF FILED ON 01/21/2011
Defendant's Attorney: DANIEL BERNIER
DEFTS' TRIAL MEMORANDUM

02/08/2011 Party(s): DANNY STROUT,CANDY JO STROUT
OTHER FILING - CLOSING ARGUMENT/BRIEF FILED ON 02/03/2011
Defendant's Attorney: DANIEL BERNIER
DEFTS'

02/08/2011 Party(s): DENNIS BUTLER,TERRY BUTLER
OTHER FILING - CLOSING ARGUMENT/BRIEF FILED ON 02/04/2011
Plaintiff's Attorney: ROBERT M MARDEN
PLTFS'

02/08/2011 Party(s): DANNY STROUT,CANDY JO STROUT
OTHER FILING - REPLY MEMORANDUM FILED ON 02/08/2011
Defendant's Attorney: DANIEL BERNIER
RESPONSE TO PLTF'S CLOSING ARGUMENTS

02/10/2011 Party(s): DENNIS BUTLER,TERRY BUTLER
OTHER FILING - REPLY MEMORANDUM FILED ON 02/09/2011
Plaintiff's Attorney: ROBERT M MARDEN
REPLY TO DEFTS' CLOSING ARGUMENT

03/22/2011 HEARING - OTHER HEARING SCHEDULE OTHER COURT ON 03/23/2011 @ 10:30  in Room No.  4
M MICHAELA MURPHY , JUSTICE
AUGSC  PHONE CONFERENCE

04/06/2011 HEARING - OTHER HEARING HELD ON 03/23/2011
M MICHAELA MURPHY , JUSTICE
Defendant's Attorney: DANIEL BERNIER
Plaintiff's Attorney: ROBERT M MARDEN
PHONE CONFERENCE

04/06/2011 Party(s): DENNIS BUTLER,TERRY BUTLER
OTHER FILING - TRIAL BRIEF FILED ON 01/20/2011
Plaintiff's Attorney: ROBERT M MARDEN
PLTFS' TRIAL MEMORANDUM

04/06/2011 FINDING - JUDGMENT DETERMINATION ENTERED ON 03/31/2011
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPY TO ATTYS
MARDEN AND BERNIER

ORDER - COURT JUDGMENT ENTERED ON 03/31/2011
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPY TO ATTYS
MARDEN AND BERNIER
Judgment entered on COUNT 1 for DENNIS BUTLER, TERRY BUTLER and against DANNY STROUT, CANDY JO
STROUT. JUDGMENT IS ENTERED FOR PLTFS ON COUNTS I AND II OF THEIR COMPLAINT.  DEFTS SHALL
WITHIN 45 DAYS FROM THE DATE THE JUDGMENT IS ENTERED ON THE DOCKET REMOVE THE STOCKADE FENCE
ERECTED IN OCTOBER OF 2009.  THE COURT DECLARES THAT SCOPE OF THE EASEMENT CONVEYED TO THE
PLTFS BY DEED DATED OCTOBER 14, 1995 AS DESCRIBED IN THE WARRANTY DEED FROM LEE AND WANDA
BUTLER TO DENNIS AND TERRY BUTLER RECORDED IN THE KENNEBEC COUNTY REGISTRY OF DEEDS IN BOOK
4999, PAGE 300, INCLUDES THE RIGHT TO USE THE EASEMENT OR RIGHT-OF-WAY TO ACCEPT AND MAKE
DELIVERIES OF INVENTORY, FUEL AND OTHER ITEMS FROM THIS RIGHT-OF-WAY AS REASONABLY NEESSARY TO
BENEFIT THE PLTFS' STORE LOT.  THE COURT FURTHER DECLARES THE RIGHT-OF-WAY TO BE 12 FEET WIDE.
THE SCOPE OF THE RIGHT-OF-WAY INCLUDES THE RIGHT TO PASS ON TO THE REAR OF THE STORE LOT, BUT
DOES NOT INCLUDE THE RIGHT FOR CUSTOMERS, TENANTS OR OWNERS OR OPERATORS OF THE STORE LOT TO
PARK ON SAID RIGHT-OF-WAY.  THE COURT DECLARES THAT THE PLTFS ARE OWNERS IN FEE SIMPLE OF THE
BULKHEAD LOCATED ON THE NORTHERN SIDE OF THE STORE LOT, THROUGH DOCTRINE OF ADVERSE POSSESSION.
Judgment entered on COUNT 3 for DANNY STROUT, CANDY JO STROUT and against DENNIS BUTLER, TERRY
BUTLER. THE COURT FINDS NO BASIS FOR AN AWARD OF PUNITIVE DAMAGES AS REQUESTED IN COUNT III OF
THE PLTFS' COMPLAINT, AND ENTERS JUDGMENT FOR DEFTS ON THIS COUNT.
Judgment entered on COUNT 2 for DENNIS BUTLER, TERRY BUTLER and against DANNY STROUT, CANDY JO
STROUT. SEE NOTE IN COUNT I
Judgment entered for DENNIS BUTLER, TERRY BUTLER and against DANNY STROUT, CANDY JO STROUT. ON
COUNT I OF DEFTS' COUNTERCLAIM, JUDGMENT IS ENTERED FOR PLTFS CONSISTENT WITH PARAGRAPH ONE OF
THIS ENTRY (RE: COUNTS I AND II OF PLTFS' COMPLAINT)
Judgment entered for DANNY STROUT, CANDY JO STROUT and against DENNIS BUTLER, TERRY BUTLER. ON
COUNT II AND III OF THE DEFTS' COUNTERCLAIM, JUDGMENT IS ENTERED FOR DEFTS AS RESPECTS THE
OVERHANG OF THE ROOF OF THE BULKHEAD ONLY.  PLTFS ARE ORDERED TO MODIFY THE ROOFLINE OF THE
BULKHEAD WITHIN 45 DAYS OF THE DATE OF ENTRY OF JUDGMENT SO THAT IT DOES NOT EXTEND OVER THE
BOUNDARY LINE AS DECLARED IN THIS JUDGMENT ABOVE IN PARAGRAPH ONE OF THIS ENTRY.

   THE COURT WILL RETAIN JURISDICTION OVER THIS MATTER SHOULD EITHER OR BOTH PARTIES CONCLUDE
THAT ADDITIONAL DOCUMENTS OR CONVEYANCES SHOULD BE FILED IN THE KENNEBEC COUNTY REGISTRY OF
DEEDS TO EFFECTUATE THIS JUDGMENT AND THEY ARE UNABLE TO AGREE TO UPON THE NECESSITY OF OR
WORDING OF SUCH DOCUMENTS OR CONVEYANCES.
                    EACH PARTY SHALL BEAR THEIR OWN COSTS.


04/06/2011 FINDING - FINAL JUDGMENT CASE CLOSED ON 04/06/2011


A TRUE COPY
ATTEST: _____ _____
                 Clerk